[No. 20035-0-II.    Division Two.    December 19, 1997.]

ALLSTATE INSURANCE COMPANY, *Respondent*, v. REMEDIOS BATACAN, ET AL., *Appellants*.

*John A. Hoglund* of *Law Office of John A. Hoglund, P.S.*, for appellants.

*Bradley A. Maxa* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondent.

HUNT, J. — Remedios and Saturino Batacan appeal summary judgment in favor of their automobile insurer, Allstate, with whom they had filed a claim under their underinsured motorist policy, following a three-vehicle accident in which they were injured. We affirm.

## FACTS

Remedios and Saturino Batacan were injured in an automobile accident when Sang Kim's truck stalled in the middle of Interstate 5 and Margery Cantrill collided with the truck, pushing it into the Batacans' automobile. Kim carried no automobile insurance, but Cantrill carried automobile liability insurance through Safeco Insurance Company. Cantrill's policy limit was $300,000 per accident.

The Batacans filed suit against Kim and Cantrill, alleging both parties were negligent in causing the accident. The Batacans also filed an underinsured motorist (UIM) claim with their insurer, Allstate Insurance Company, and demanded arbitration, as provided in the policy.[1] Kim and Cantrill were not parties to the arbitration.

In November 1994, a three-arbitrator panel determined that Kim and Cantrill were each 50 percent at fault and the Batacans were fault-free. The arbitrators set Remedios Batacan's damages at $58,000 and Saturino Batacan's damages at $2,000. Allstate refused to pay the Batacans, maintaining that they were not entitled to UIM insurance because Cantrill's policy limits exceeded total damages.

In February 1995, Allstate filed a Complaint for Declaratory Relief, asking the Pierce County Superior Court to declare that Allstate had no obligation to pay UIM benefits to the Batacans for this accident. The Batacans counterclaimed, asserting equitable estoppel and charging Allstate with bad faith and fraud.

In April 1995, the Batacans settled with Safeco and Cantrill for $54,000.

In August 1995, Allstate and the Batacans both moved for summary judgment. The trial court granted Allstate's summary judgment motion and dismissed the Batacans' summary judgment motion and counterclaims.[2]

The Batacans filed this appeal, claiming they are entitled to UIM benefits from Allstate in the amount of $30,000 or,

---

[1] The arbitration clause in the Batacans' insurance policy with Allstate reads as follows: "If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an underinsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration . . . ."

[2] In a letter to the parties, the trial court stated that the arbitrators had found Kim and Cantrill jointly and severally liable. Although the arbitrators' decision did not specify that they were jointly and severally liable, it can be inferred from the arbitrators' finding the Batacans were fault-free.

alternatively, $6,000. They also request reasonable attorney fees.

## ANALYSIS

### I

#### SUMMARY JUDGMENT—UNINSURED MOTORIST CLAIM

When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court and reviews the evidence de novo. *Seven Gables Corp. v. MGM/UA Entertainment Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A summary judgment motion brought under CR 56 should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact, and that the moving party in entitled to judgment as a matter of law. *Wilson*, 98 Wn.2d at 437 (citing *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980)). The operative facts in this case are not in dispute. The issues raised are questions of law.

#### A. Underinsured Motorist Statute

█ The Washington Underinsured Motorist (UIM) statute requires UIM insurance to be "provided . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles . . . ." RCW 48.22.030(2). RCW 48.22.030(1) defines an "underinsured motor vehicle" as

> a motor vehicle with respect to the ownership, maintenance, or use of which either no bodily injury or property damage liability bond or insurance policy applies at the time of an accident, or with respect to which the *sum of the limits of liability* under all bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident is *less than the applicable damages which the covered person is legally entitled to recover*.

RCW 48.22.030(1) (emphasis added). The UIM statute cov-

ers damages by both noninsured and underinsured vehicles. "The intent is that UIM insurance supplement but not supplant liability insurance." *Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 284, 818 P.2d 608 (1991). In other words, "liability insurance is primary, while UIM insurance is secondary." *Dejbod*, 63 Wn. App. at 284.

### 1. Applicable Insurance Policies

■ The UIM statute requires a UIM insurer to pay "(1) a claimant's legally recoverable ('applicable') damages or UIM limits, whichever is less, minus (2) 'the sum of the limits of liability under all . . . insurance policies *applicable* to a covered person after an accident.' " *Dejbod*, 63 Wn. App. at 284 (quoting RCW 48.22.030(1)) (emphasis added). An insurance policy is "applicable" when "the claimant, if he or she diligently pursued the claim against the liability insured to final adjudication, could legally require the liability insurer to pay." *Dejbod*, 63 Wn. App. at 284-85.

> [T]he UIM insurer . . . undertakes a duty to pay that extends no farther than the legal liability of the involved tortfeasors, if any. Thus, when it is said that the purpose of liability and UIM insurance is "full compensation for the victims of auto accidents," what is meant is that liability and UIM insurance, working together, are intended to fully compensate claimants for those amounts that they are legally entitled to recover from liable tortfeasors, up to the sum of applicable liability and UIM limits. *See Tissell v. Liberty Mut. Ins. Co.*, 115 Wn.2d [107,] 120 [795 P.2d 126 (1990)] (Callow, C.J., concurring); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d [518,] 531 [707 P.2d 125 (1985)].[3]

*Dejbod*, 63 Wn. App. at 283.

The question of whether a plaintiff can recover from an insured determines only whether the policy is *applicable*.

---

[3]*Dejbod*, 63 Wn. App. at 283 (citations omitted) notes:

We have construed the purpose of the [UIM] statute as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.

Here, Cantrill's $300,000 Safeco insurance policy is "applicable" because the Batacans would be legally entitled to recover if they "diligently pursued the claim" to final adjudication.

## 2. Joint and Several Liability

The *extent* to which an insurance policy is "applicable" depends upon whether an insured tort-feasor is severally, or jointly and severally, liable. RCW 4.22.070; *In re Arbitration of Fortin*, 82 Wn. App. 74, 82-83, 914 P.2d 1209 (1996), *overruled on other grounds by Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 946 P.2d 388 (1997).

Several liability is presumed, unless "(1) the claimant is without fault and (2) judgment has been entered against more than one defendant." *Fortin*, 82 Wn. App. at 83 (citing RCW 4.22.070(1)(b)). A UIM arbitration constitutes an "adjudication of liability," equivalent to a judgment, for UIM coverage purposes. *See Dejbod*, 63 Wn. App. at 286.[4] Here, the arbitrators determined that claimant Batacans were without fault and that two tort-feasors, Kim and Cantrell, were at fault. Thus Kim and Cantrill are jointly and severally liable. RCW 4.22.070(1)(b).

## 3. Effect of a Settlement for Less that Policy Limits

"Once 'applicable' within the meaning of RCW 48.22.030(1), a liability policy is applicable to the extent of its limits, and not merely to the extent of whatever payment the liability insurer negotiated with the injured claimant." *Dejbod*, 63 Wn. App. at 286-87. This "precludes a UIM claimant and liability insurer from using a negotiated settlement for less than policy limits as a means of involuntarily converting a UIM carrier from secondary to primary indemnitor with respect to damages that exceed the settlement but are less than liability policy limits." *Dejbod*, 63 Wn. App. at 287 n.2.

Here, because the two tortfeasors, Cantrill and Kim, are

---

[4]Although not instituted in court, the arbitration serves as a binding and final determination as to the extent of Allstate's legal duty to pay the Batacans under the UIM clause of their insurance policy.

jointly and severally liable, legally the Batacans could look to either to pay their total damages. But since Kim had no insurance and Cantrill's insurance exceeded the $60,000 damages determined in arbitration, the Batacans must look first to Cantrill's insurer, Safeco, for payment of the full $60,000 damages. Only if Cantrill's policy limit had been less than $60,000 could the Batacans look to Allstate for payment of the remainder of their damages under their UIM clause. Because the Batacans chose to settle with Cantrill for less than their full damages, they cannot now look to Allstate to make up the difference.[5]

Our decision in *Dejbod* is directly on point. Injured Dejbod also had UIM coverage with Allstate; the policy required arbitration to resolve coverage disputes as between Dejbod and Allstate. Without completing trial, Dejbod settled with one tort-feasor for his policy limit of $25,000, and with the other for $11,000, though that tort-feasor's policy limit was $100,000. Dejbod then made a UIM claim against Allstate and asked for arbitration. Allstate agreed but took the position that UIM coverage would apply only if Dejbod's damages exceeded the total of the two tort-feasors' policy limits, $125,000. Dejbod, like the Batacans, contended that Allstate was liable under his UIM policy for his damages in excess of the $36,000 he received in settlement from the tort-feasors.

We agreed with Allstate and held that:

> A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1) if the person insured by the liability policy is liable to the injured claimant and there is no other reason why the injured claimant could not legally recover from the liability carrier. To so hold is consonant with the purposes of UIM insurance, for if the claimant diligently pursues the claim, he or she will be fully compensated, by a combination of payments from the liability and UIM carriers, for all amounts that he or she is legally entitled to recover from others, up to a maximum of the sum of applicable liability and UIM policy

---

[5]Conversely, if the Batacans had settled for more than $60,000, they would have been entitled to keep the excess.

limits. To hold otherwise would vest the UIM claimant with the option of making the UIM carrier the primary rather than secondary indemnitor, in contravention of the desired primary/secondary relationship between carriers, for it would allow the UIM claimant to lawfully demand that the UIM carrier pay damages covered by the liability policy as well as damages in excess of it.

. . . .

. . . . RCW 48.22.030(1) expressly allows the UIM carrier to subtract "the sum of the limits" of applicable liability policies.

*Dejbod*, 63 Wn. App. at 285-87. As further explained in an attorney general's opinion, " ' "[i]f an injured insured settles his claim with the tortfeasor's liability insurer for less than the policy limits, the 'underinsured motorist' carrier is entitled to compute its payments to the injured insured as though the policy limits had been paid." ' " *Dejbod*, 63 Wn. App. at 287 (quoting *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 727-28, 733 P.2d 213 (1987) (quoting 13 Op. Att'y Gen. 19 (1981))).

We therefore hold that Allstate can offset the full limit of Cantrill's policy because Kim and Cantrill were jointly and severally liable. Cantrill's insurer would have been required to pay the entire $60,000, if the Batacans had diligently pursued their claim against Cantrill to final adjudication.

## B. Subrogation Rights

Because we decide this case under the UIM statute, we do not address Allstate's subrogation argument.

## II

### The Batacans' Bad Faith and Consumer Protection Act Claims

RCW 48.01.030 requires insurers to act in good faith when dealing with their insureds. If an insurer denies payment or coverage without "reasonable justification," then the insurer has acted in bad faith and has violated the

Consumer Protection Act. *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520, 7 A.L.R.5TH 1014 (1990). Bad faith exists only when the insurer's position is "unreasonable, frivolous, or untenable." *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 471, 760 P.2d 337 (1988).

The Batacans allege that Allstate acted in bad faith when it refused to pay UIM benefits. Because we find Allstate's argument meritorious and affirm the trial court's summary judgment in Allstate's favor, the Batacans' bad faith argument fails.[6]

## III

### ATTORNEY FEES

■ In *Mailloux v. State Farm Mut. Auto. Ins. Co.*, 76 Wn. App. 507, 887 P.2d 449 (1995), the UIM insurer asserted that the insured's damages did not exceed the limits of "applicable" liability insurance. Similarly, Allstate correctly argues that the Batacans' damages do not exceed the limits of applicable liability insurance; rather Cantrill's policy limits exceed the Batacans' damages as determined by the arbitrators for UIM purposes. Therefore, Allstate appropriately denied the Batacans' claim while not denying UIM coverage, and *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991) does not authorize attorney fees.[7] *Mailloux*, 76 Wn. App. at 518; *Olympic*, 117 Wn.2d at 53; *Dayton v. Farmers Ins. Group*, 124 Wn.2d

---

[6]A recent case from Division One, *Mencel v. Farmers Ins. Co.*, 86 Wn. App. 480, 937 P.2d 627 (1997), involving denial of a UIM claim, succinctly resolves the issue:

> While it is a close question, we agree with the trial court that Farmers did not deny UIM benefits in bad faith, and therefore affirm the dismissal of Mencel's bad faith claim and claim under the Consumer Protection Act . . . . Although we reject all Farmers arguments here, there is no case law precisely on point, and we do not deem all Farmers' arguments so completely frivolous as to constitute bad faith.

*Mencel*, 86 Wn. App. at 487 (citation omitted).

[7]The rule from *Olympic* requires an award of attorney fees "in any legal action where the insurer compels the insured to assume the burden of legal action,

277, 280, 876 P.2d 896 (1994).

CONCLUSION

Affirmed.

HOUGHTON, C.J., and SEINFELD, J., concur.

Reconsideration denied February 9, 1998.

Review granted at 135 Wn.2d 1008 (1998).

to obtain the full benefit of his insurance contract . . . ." *Olympic*, 117 Wn.2d at 53. Such is not the case here.