[Nos. 17208-2-III; 17345-3-III.    Division Three.    April 20, 1999.]

RANDAL R. PETERSON, *Respondent*, v. SAFECO INSURANCE COMPANY OF ILLINOIS, *Appellant*.

*Huppin Ewing Anderson & Paul, P.S.*, by *Patrick Fredette*, for appellant.

*Douglas B. Ecton*, for respondent.

---

SWEENEY, J. — This is an insurance subrogation dispute between Safeco Insurance Company and its insured, Randal R. Peterson. Despite Safeco's contrary instructions to Mr. Peterson and his attorney, Mr. Peterson settled a personal injury case for $20,000, and included Safeco's subrogated personal injury protection (PIP) interest of $3,997.64 in the settlement. Mr. Peterson settled far short of the available $250,000 policy limits afforded by the third party carrier, Farmers Insurance Group of Companies. Mr. Peterson claims he was not fully compensated for his injuries and therefore does not have to reimburse Safeco for its PIP benefits. Safeco counters that because Mr. Peterson prejudiced its rights to recover against the third party by fully releasing that third party from any further liability, it is entitled to the full $3,997.64. Mr. Peterson responds that if Safeco is entitled to recover its PIP payments, then it is obligated to pay a proportionate share of attorney fees and costs for recovering the subrogated interest.

The Supreme Court's opinion in *Mahler v. Szucs*,[1] lays out the analytical framework for resolving this dispute. First, Mr. Peterson did not prejudice Safeco's right to reimbursement. He created a common fund and currently holds the PIP amount in trust, pending resolution of this dispute. Second, having created this common fund, which benefits Safeco, Mr. Peterson is entitled to a proportionate share of attorney fees and costs incurred to settle the suit. Third, according to *Mahler* this "is not a coverage dispute, but rather a dispute over the value of" the insured's subrogated interest. *Mahler v. Szucs*, 135 Wn.2d 398, 432, 957 P.2d 632, 966 P.2d 305 (1998). So Mr. Peterson is not entitled to fees and costs. We reverse the decision of the trial court which denied Safeco's subrogation claim. We reverse the award of prejudgment interest. And, we deny *Olympic Steamship*[2] attorney fees.

## FACTS

An automobile driven by Aaron C. Carroll collided with one driven by Mr. Peterson. Mr. Carroll was responsible for the accident. Mr. Peterson was injured. Mr. Carroll carried liability insurance with Farmers Insurance with $250,000 limits. Safeco paid $3,997.64 PIP benefits to its insured, Mr. Peterson.

Farmers made an offer to settle Mr. Peterson's liability claim. Mr. Peterson rejected the offer and sued. Mr. Peterson settled the claim for $20,000, $230,000 short of the $250,000 limit. In exchange for two settlement checks, one for $16,002.36 payable to Mr. Peterson and his attorney, and one for $3,997.64 payable to Mr. Peterson, his attorney and Safeco, Mr. Peterson fully released Mr. Carroll and Farmers. He further agreed to indemnify Mr. Carroll and Farmers and hold them harmless from any claims including Safeco's subrogation claim.

Mr. Peterson then asked Safeco to endorse the $3,997.64

---

[1]135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998).

[2]*Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

check, set aside for its subrogation interest. He claimed that he had not been fully compensated for his loss. Safeco refused and demanded payment of its subrogation interest.

Mr. Peterson then sued for declaratory judgment. He requested a declaration that he had not been fully compensated, relying on *Thiringer v. American Motors Insurance Co.*,[3] and therefore did not have to reimburse Safeco for its PIP subrogation. Safeco answered and counterclaimed for the full amount of its subrogated interest claiming Mr. Peterson had violated the insurance contract by fully releasing Mr. Carroll and his insurer. The court found that Mr. Peterson had not been fully compensated and denied Safeco reimbursement for its PIP payments.

It awarded Mr. Peterson prejudgment interest on the $3,997.64 and statutory costs, but denied his attorney fees request, made pursuant to *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

DISCUSSION

1. Policy Language.

OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall then have that right. *That person shall do*:

    1.   Whatever is necessary to enable us to exercise our rights; and

    2.   *Nothing after loss to prejudice them.*

    . . . .

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, *that person shall hold in trust for us the proceeds of the recovery.*

**C.** *We shall be entitled to a recovery under paragraph A. or B.*

---

[3]91 Wn.2d 215, 588 P.2d 191 (1978).

*only after the person has been fully compensated for damages.*

(Emphasis added.)

## 2. Standard of Review.

██ Our review is de novo for two reasons. First, the trial court decided the case on cross motions for summary judgment. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). And second, interpretation of an insurance contract is a question of law. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990).

## 3. Canons of Construction.

██ We employ several canons of construction when interpreting an insurance contract. First, the contract should be interpreted liberally in favor of the insured. *Hawaiian Ins. & Guar. Co. v. Federated Am. Ins. Co.*, 13 Wn. App. 7, 20, 534 P.2d 48, 93 A.L.R.3D 407 (1975). Second, we interpret the policy as it would be understood by an average person rather than in a technical, legal sense. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993), *supplemented*, 123 Wn.2d 131, 865 P.2d 507, 44 A.L.R.5TH 905 (1994). And third, we read the insurance policy as a whole, giving force and effect to each clause in the policy. *Id.*

## 4. Underlying Assumptions.

The arguments of these litigants are based on two basic assumptions. Mr. Peterson's assumption is that he was not fully compensated. Safeco's assumption is that because Mr. Peterson fully released Farmers, its rights were prejudiced. We reject both assumptions.

A. Full Compensation. Mr. Peterson was paid $23,997.64. Of that sum, $3,997.64 is being held in trust pending resolution of this suit.

██ ██ Farmers had $250,000 available to settle this claim. After negotiations and consultation with an experi-

enced plaintiff's personal injury lawyer, Mr. Peterson accepted $20,000. And in exchange for that money, he fully released Farmers and Mr. Carroll from any further liability. He also agreed to indemnify them from any claim by Safeco for its PIP interest. If the gross settlement did not reflect what Mr. Peterson, or his attorney, believed to be full compensation, then they had no obligation to accept it. They could have, instead, completed arbitration to have the question of full compensation decided.

*Allstate Insurance Co. v. Batacan*, 89 Wn. App. 260, 948 P.2d 1316 (1997), *review granted*, 135 Wn.2d 1008 (1998), is an underinsured motorist (UIM) case. Nonetheless, the court's discussion of full compensation is helpful here. The court in *Batacan* refused to permit a UIM claimant to negotiate a settlement for less than the policy limits with a third party carrier and thereby involuntarily convert the "UIM carrier from [a] secondary to [a] primary indemnitor[.]" *Id.* at 265 (citing *Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 287 n.2, 818 P.2d 608 (1991)). Thus, the question whether an insured has been fully compensated does not arise until assets, or at least those assets readily accessible through a liability policy, have been exhausted.

Mr. Peterson and his attorney knew of Safeco's subrogation interest. When they settled the case, they provided for Safeco's PIP claim. They also knew the percentage of recovery payable for Mr. Peterson's attorney for fees.

Mr. Peterson argues that, because of his costs and attorney fees, his final recovery was reduced and therefore he was not fully compensated. But he settled with full knowledge of his obligation to pay attorney fees. He had agreed to reduce any recovery by a percentage contingency fee.

Mr. Peterson relies on *Thiringer v. American Motors Insurance Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978), and more particularly the cases cited by *Thiringer*[4] for the proposition that consideration of the reduction of his award by fees and costs is appropriate. The cases cited certainly hold

---

[4]*Skauge v. Mountain States Tel. & Tel. Co.*, 172 Mont. 521, 565 P.2d 628 (1977); *St. Paul Fire & Marine Ins. Co. v. W.P. Rose Supply Co.*, 19 N.C. App. 302,

that the court should consider payment of plaintiff's attorney fees and costs on the question of full compensation. But that analysis was not necessary for the decision in *Thiringer.* It was not discussed or adopted in *Thiringer* and is therefore dicta. The insured, in *Thiringer,* completely exhausted the $15,000 available from the third party carrier. It then fully released the third party and, by doing so, eliminated any right of reimbursement to American Motors, the first party carrier.

Were we to conclude that Safeco could be denied reimbursement for its PIP subrogation because of Mr. Peterson's obligation to pay a percentage of his recovery to his attorney, we would effectively shift the burden of his attorney fees from the plaintiff in a personal injury action to the first party carrier. In *Olympic Steamship*, our Supreme Court concluded that the insurance company should be obligated to pay fees to its insured only where it was embroiled in a coverage dispute.

Denying a first party carrier its right of reimbursement until its insured has been fully compensated, including his or her attorney fees, would represent a shift in legal policy of this state which is best left to the Supreme Court. Additionally, as the court in *State Farm Mutual Automobile Insurance Co. v. Lou*[5] noted, that kind of "cost-benefit analysis" (payment of plaintiff's attorney fees and costs) is "irrelevant in this context."

B. Prejudice to Safeco's Subrogation Claim. We turn now to Safeco's claim that it was prejudiced by Mr. Peterson's settlement and release of Farmers Insurance and Mr. Carroll. Paragraph A of Safeco's "Our Right to Recover Payment" clause (reduced to its essence) precludes Mr. Peterson from doing anything which would interfere with Safeco's right to recovery—here reimbursement for PIP payments.

Paragraph B requires that Mr. Peterson hold pro-

198 S.E.2d 482 (1973); *Propek v. Farmers' Mut. Ins. Ass'n,* 65 S.W.2d 390 (Tex. Civ. App. 1933).

[5]36 Wn. App. 838, 842, 678 P.2d 339 (1984).

ceeds, or that portion of recovery attributable to PIP payments, in trust. Mr. Peterson has done that. These funds currently are held in the form of a Farmers' draft, or check, payable to Mr. Peterson, his attorney and Safeco. And those funds are certainly available to Safeco pending resolution of this dispute.

Here, like in *Mahler*, " '[t]he literal language of the clause only purports to transfer an interest in moneys after they become the property of the insured. The clause creates a right in the proceeds, not against the tortfeasor.' " *Mahler*, 135 Wn.2d at 420 (quoting *State Farm Mut. Auto. Ins. Co. v. Pohl*, 255 Or. 46, 464 P.2d 321, 324 (1970)).

Based on its review of *Thiringer* and *Leader National Insurance Co. v. Torres*,[6] the court in *Mahler* concluded that "the general view [is] that subrogation creates in the insurer, by contract or equity, a right to be reimbursed." *Mahler*, 135 Wn.2d at 417.

Again, by paragraph A(1) and (2) of his policy, Mr. Peterson agreed first to do whatever was necessary to enable Safeco to exercise its rights—here a right of reimbursement. And as a necessary and stated corollary, Mr. Peterson agreed to do nothing to prejudice Safeco's rights. He has honored those obligations. Safeco therefore has not been prejudiced.

Safeco relies, however, on the case of *Lou* for the proposition that once the third party insurer, and its insured tortfeasor, have been released the first party carrier is irreparably prejudiced. And so its insured forfeits any right to the subrogated PIP proceeds. The language of *Mahler* has at least eroded, if not overruled, *Lou*.

The *Lou* court suggested that an insured can avoid prejudicing the rights of his or her carrier by simply not releasing the subrogated interest of its insurer. *State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. 838, 841, 678 P.2d 339 (1984). *Mahler*, on the other hand, correctly notes the practical problem with *Lou*'s approach: "[A] plaintiff in a

[6]113 Wn.2d 366, 779 P.2d 722 (1989).

personal injury action is entitled to seek recovery from the tortfeasor for special damages, such as medical payments and lost wages. Indeed, it would be unrealistic and unfair to expect an injured party not to seek such damages." *Mahler*, 135 Wn.2d at 425-26.

It is difficult to accept *Lou*'s categorical conclusion that a carrier is prejudiced by a settlement which extinguishes its right to subrogation when the effect of the settlement here is to create a fund from which Safeco can and, as we will conclude, will be reimbursed. Safeco was not prejudiced.

All of which leads us to our next question—Should Safeco be obligated to pay a proportionate share of Mr. Peterson's attorney fees?

### 5. Pro Rata Division of Attorney Fees.

Again we turn to the *Mahler* decision. There the court quotes from a treatise by John A. Appleman and Jean Appleman:

> "It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share."

*Mahler*, 135 Wn.2d at 425 n.17 (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85, at 335 (1981)).

To do otherwise "would require injured plaintiffs to refrain from seeking recovery from defendants for PIP benefit payments simply because [the first party carrier] might elect to recover those payments on its own." *Mahler*, 135 Wn.2d at 426. The *Mahler* court then went on to conclude that a recovery which includes the insurer's PIP benefits creates a common fund for the benefit of the insured. *Id*. at 426-27.

■ In order for Mr. Peterson to settle this case, he had to sue and then convince the third party liability carrier of a sufficient risk of liability, a sufficient quantity of damages, and a proximate relationship between that liability and damages. *See id.* at 428-29. Those efforts resulted in a common fund which benefits Safeco. And Safeco is therefore obligated to pay a proportionate share of Mr. Peterson's attorney fees. *DeTurk v. State Farm Mut. Auto. Ins. Co.*, 94 Wn. App. 364, 967 P.2d 994 (1998).

### 6. Prejudgment Interest.

■ The trial judge awarded Mr. Peterson prejudgment interest. However, he is not entitled to prejudgment interest since the amount at issue is not liquidated. *Mahler*, 135 Wn.2d at 429 (citing RCW 4.56.110, RCW 19.52.020 and *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968)).

### 7. *Olympic Steamship* Fees.

■ Finally, Mr. Peterson argues that he is entitled to *Olympic Steamship* fees both in the trial court and now on appeal. Again, the decision in *Mahler* is dispositive:

> [T]he dispute between Mahler and State Farm is not a coverage dispute, but rather a dispute over the value of State Farm's subrogation interest. Both Mahler and State Farm agree State Farm has a right to be reimbursed for PIP benefits paid to Mahler.

*Mahler*, 135 Wn.2d at 432. While Mr. Peterson disputed that Safeco was entitled to any of its PIP subrogation because he had not been fully compensated, the rationale of *Mahler* applies. The trial court properly denied Mr. Peterson's request for fees and he is not entitled to fees on appeal.

### 8. Conclusion.

We reverse the holding of the trial court denying Safeco's right to recover its subrogated interest. We also reverse the

trial court's award of prejudgment interest to Mr. Peterson. We affirm the court's denial of *Olympic Steamship* attorney fees to Mr. Peterson. Mr. Peterson is entitled to recover his proportionate share of attorney fees and costs based upon the amount of Safeco's subrogated interest. Neither party is entitled to fees and costs on appeal.

SCHULTHEIS, C.J., and KURTZ, J., concur.