131 P.3d 922 (2006)
132 Wash.App. 355
Kevin SHERRY, a single man, Appellant,
v.
FINANCIAL INDEMNITY COMPANY, a foreign insurer, Respondent.
No. 32946-8-II.
Court of Appeals of Washington, Division 2.
April 4, 2006.
*924 David Hadley Middleton, Attorney at Law, Federal Way, WA, for Appellant.
Debora A. Dunlap, Gulliford, McGaughey & Dunlap PLLC, Bellevue, WA, for Respondent.
BRIDGEWATER, P.J.
¶ 1 Kevin Sherry appeals from a judgment against Sherry's insurance company, Financial Indemnity Company (FIC), under an uninsured motorist (UIM) claim. The trial court deducted $8,256 from an arbitration award as an offset for money FIC advanced Sherry under a personal injury protection (PIP) clause in the insurance policy. We hold that FIC was not entitled to an offset for PIP payments because Sherry was not fully compensated. We reverse and remand.
¶ 2 Sherry, a pedestrian, was injured when an automobile struck him. The driver of the car was not insured. But Sherry was insured with FIC, and his policy included an UIM clause. In addition, his policy included a PIP clause obligating FIC to pay reasonable and necessary medical expenses up to $10,000 and lost wages. And under that policy, he received PIP benefits of $10,000 for medical expenses and $4,600 for lost wages.
¶ 3 Exercising his contractual right under his UIM policy, Sherry requested arbitration of the amounts due under his UIM policy for the accident. The arbitrator determined that Sherry's damages were $53,127.92 in medical costs and $90,000 in general damages. But the arbitrator found that Sherry was 70 percent at fault for the accident and reduced the award by that amount. Thus, Sherry's final UIM award was for $42,938.38, which is 30 percent of his total damages.
¶ 4 After the arbitrator's award, the parties could not agree whether Sherry had an obligation to reimburse FIC for the $14,600 it had already paid him under the PIP clause. Apparently, FIC asked the arbitrator to rule on the matter. The arbitrator determined that he did not have authority to determine the amount of the PIP offset and refused to address the issue.
¶ 5 Meanwhile, Sherry applied to Pierce County Superior Court to confirm the arbitrator's UIM award under former RCW 7.04.150 (2004). FIC objected to Sherry's proposed judgment based, in large part, on whether FIC was entitled to a reimbursement for its PIP payments. Although both parties acknowledged that the superior court did not have jurisdiction under former RCW 7.04.150 to determine the issue, the parties agreed to submit it to the superior court.
¶ 6 Having accepted jurisdiction, the trial court accepted FIC's position and decided that FIC was entitled to an offset for its full PIP payments to Sherry, less attorney fees. Therefore, the superior court deducted $8,256 ($14,600 minus the proportionate share of attorney fees) from the arbitration award and entered judgment for Sherry for $34,682.38. Sherry appealed.

I. Jurisdiction
¶ 7 On appeal, FIC argues that we lack jurisdiction over this appeal. FIC seems to be arguing either (1) that under Price v. Farmers Insurance Company, 133 Wash.2d 490, 946 P.2d 388 (1997), the superior court did not have jurisdiction to resolve the issue of the PIP offset or (2) that Sherry waived his right to appeal by agreeing to be bound by the superior court's decision and accepting the money from the trial court's judgment. Sherry contends that FIC agreed to try this matter before the superior court and that he did not waive his right to appeal in agreeing to submit the issue to the superior court or in accepting the money from the judgment. We agree.
¶ 8 On the issue of jurisdiction, Price is the controlling authority. In Price, the insured, Price, was injured by an uninsured motorist. Price, 133 Wash.2d at 493, 946 P.2d 388. His insurance policy with Farmers Insurance Company (Farmers) contained a PIP clause and an UIM clause. Price, 133 Wash.2d at 493, 946 P.2d 388. He took his PIP payments and submitted the amount of damages under the UIM clause to arbitration. Price, 133 Wash.2d at 493, 946 P.2d 388. After the arbitrator determined the amount of damages, *925 Price sought to have the award confirmed under former RCW 7.04.150. Price, 133 Wash.2d at 494, 946 P.2d 388. Farmers objected and sought an offset for the PIP payments already advanced. Price, 133 Wash.2d at 494-95, 946 P.2d 388.
¶ 9 The court held that the superior court lacked jurisdiction under the arbitration statutes to resolve the PIP payment issue. Price, 133 Wash.2d at 498, 500, 946 P.2d 388. The court then noted that the proper procedure was for the trial court to enter a judgment confirming the award and:
[t]hereafter the parties must either resolve the remaining PIP offset coverage dispute by agreement or commence a separate action under the superior court's general jurisdiction to determine the amount and propriety of the claimed PIP offset and enter the corresponding monetary judgment.
Price, 133 Wash.2d at 502, 946 P.2d 388.
¶ 10 The court determined that the propriety of a PIP offset is an insurance coverage issue. Price, 133 Wash.2d at 498 n. 8, 946 P.2d 388. And coverage issues are not subject to arbitration but are properly resolved in declaratory actions. Price, 133 Wash.2d at 498, 946 P.2d 388 (citing Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wash.2d 99, 113, 751 P.2d 282 (1988)).
¶ 11 A declaratory judgment is the functional result of the proceedings in this case. Both parties agreed to submit this issue to resolution by the superior court in order to save time and expense. In this context, this agreement was sufficient to give the trial court authority to resolve the issue. CR 15(b) provides that when issues not raised in the pleadings "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The rule further indicates that a motion to amend the pleadings to conform to the evidence may be made at any time, including after judgment, and that the court shall freely allow amendment. CR 15(b).
¶ 12 Here, the parties acted as though they had brought a separate declaratory judgment to determine the PIP offset as required by Price. They fully litigated the issue, and the trial court rendered judgment. Because this action was resolved under the trial court's general jurisdiction, as a declaratory judgment, the issue was properly before the trial court. We have jurisdiction over appeals from superior courts. RCW 2.06.030.
¶ 13 FIC's argument that Sherry somehow waived his right to appeal is similarly flawed. Agreeing to submit a matter to the court does not mean a litigant waives the right to appeal. Otherwise, every plaintiff who filed an action would be barred from an appeal. Nor does accepting a judgment waive the right to appeal. The rules of appellate procedure specifically provide that:
[a] party may accept the benefits of a trial court decision without losing the right to obtain review of that decision . . . if, regardless of the result of the review based solely on the issues raised by the party accepting benefits, the party will be entitled to at least the benefits of the trial court decision.
RAP 2.5(b)(1)(iii). Here, both parties agree that Sherry is entitled to the $34,682.38 judgment. The only issue is whether the superior court should have given Sherry the full arbitrator's award. Accordingly, Sherry did not waive his right to appeal. RAP 2.5(b)(1)(iii).

II. Offset
¶ 14 Sherry argues that the offset[1] to which FIC is entitled for the PIP payments made before Sherry recovered under his UIM claim should be reduced in proportion to Sherry's fault in the accident. Sherry reasons that if he recovers only 30 percent of his total damages because he was 70 percent at fault, FIC should be reimbursed only 30 percent of its PIP payments. We disagree.
*926 ¶ 15 The disagreement here is how to interpret the insurance contracts, a question of law that we review de novo. Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990).
¶ 16 Both Sherry and FIC agree that under Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998), an insurer like FIC may contract for the right to be reimbursed for payments made under a PIP clause if the insured, Sherry, recovers money from the tortfeasor. The same rule applies even when, as here, the tortfeasor is uninsured because an UIM payment is treated as coming from the tortfeasor. Hamm v. State Farm Mut. Auto. Ins. Co., 151 Wash.2d 303, 308, 88 P.3d 395 (2004).
¶ 17 But this right to reimbursement is subject to the rule that an insurer may not recover before the insured has been fully compensated. Winters v. State Farm Mut. Auto Ins. Co., 144 Wash.2d 869, 876, 31 P.3d 1164, 63 P.3d 764 (2001); Mahler, 135 Wash.2d at 416-17, 957 P.2d 632. This rule was first announced in Thiringer v. American Motors Insurance Company, 91 Wash.2d 215, 588 P.2d 191 (1978), in which the court stated that an insurer may recover "only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss." Thiringer, 91 Wash.2d at 219, 588 P.2d 191.
¶ 18 Here, the parties agree that Sherry's UIM policy contained a clause that specifically authorized an offset. The clause provides that:
To determine the amounts payable to an insured person under [UIM coverage], we will first credit against the insured person's damages, the following:
. . . .
3. Any amounts paid under other Parts of this policy
Clerk's Papers (CP) at 20. And the PIP policy also provides that "[a]ny amount paid or payable for bodily injury under the Liability or Underinsured Motorist Bodily injury coverages of this policy shall be deducted from the amount payable under this Part." CP at 20. These provisions, as Sherry concedes, give FIC a contractual right to reimbursement of the amount FIC paid under the PIP part of the policy.[2]
¶ 19 Sherry argues, nonetheless, that this reimbursement should be in proportion to the percentage of damages that he recovered. He relies on language in Thiringer, indicating that the general rule is that "an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for the damage." Thiringer, 91 Wash.2d at 219, 588 P.2d 191. Sherry asserts this language implies that if a he can recover only 30 percent of his total damages, then FIC can be reimbursed for only 30 percent of its PIP payments.
¶ 20 But this argument misstates both contractual obligation under the policy and the rule announced in Thiringer. The policy provides that any amounts paid under the PIP part of the policy are credited to the UIM payments. Under a plain reading of the policy, FIC would be entitled to a full refund, not 30 percent of its payments.
¶ 21 And the Thiringer full compensation rule does not contemplate proportional reimbursement. Instead, the Thiringer court indicated that the insurer can recover "only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss." Thiringer, 91 Wash.2d at 219, 588 P.2d 191. Thus the insurer is not entitled to a reimbursement based on the percentage of recovery but, rather, to a reimbursement of the amount in excess of full compensation.
¶ 22 Later cases support this interpretation. In Winters, our Supreme Court quoted at length from the Court of Appeals opinion, including the language that: "Because the PIP insured has not received funds in excess of her total damages . . . the PIP insurer is not entitled to reimbursement at all." Winters, *927 144 Wash.2d at 880, 31 P.3d 1164 (quoting Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 613-14, 994 P.2d 881 (2000), aff'd, 144 Wash.2d 869, 31 P.3d 1164 (2001)). The insurer may, after all, pursue the tortfeasor via classical subrogation to apportion the risk of loss between the insurer and tortfeasor.
¶ 23 After the insured is fully compensated, the insurance contract provisions control the extent of reimbursement. In Mahler, the court indicated that an insurer's right to reimbursement is "governed by the general public policy of full compensation of the insured." Mahler, 135 Wash.2d at 418, 957 P.2d 632. The Mahler court specifically determined that:
Provided the insurer recognizes the public policy in Washington of full compensation of insureds and its other duties to insureds by statute, regulation, or common law, the insurer may establish its right to reimbursement and the mechanism for its enforcement by its contract with the insured.
Mahler, 135 Wash.2d at 436, 957 P.2d 632.
¶ 24 We reject Sherry's argument that FIC is entitled to only a proportional offset and hold that because Sherry's contract provides that any advances under PIP can be recovered, FIC is entitled to recover whatever benefits remain after Sherry is fully compensated for his loss. Therefore, the proper question is whether Sherry was "fully compensated," thus triggering the FIC's right to reimbursement. Thiringer, 91 Wash.2d at 219, 588 P.2d 191. And on this, the parties disagree.
¶ 25 Sherry asserts that he is not fully compensated until he receives payment for his total damages as determined by the arbitrator. FIC responds that Sherry was fully compensated when he received the full amount of money to which he was legally entitled; in this case the arbitrator's award. FIC also argues that the rule requiring full compensation before it is entitled to reimbursement does not apply when Sherry was partially at fault for the accident. This is a case of first impression because prior case law addresses the "innocent insured," not an "at-fault" insured.
¶ 26 Neither of the parties presents a compelling answer to how we should interpret the "fully compensated" language from the Supreme Court. Sherry relies on dicta in Thiringer stating that a provision allowing an insurer to recover PIP payments if "the insured recovers less than his total damages" from the person legally responsible for the damages would be unfair. Thiringer, 91 Wash.2d at 220, 588 P.2d 191. But this language does not describe the facts of Sherry's case. According to the arbitrator, Sherry and the uninsured motorist were both legally responsible for Sherry's damages. And with the UIM judgment, Sherry received all of the damages for which the uninsured motorist was responsible.
¶ 27 But Sherry's argument has some merit as a matter of policy. As the court noted in Thiringer, the insured pays an additional premium for the PIP coverage and has the right to expect payments under that coverage according to its terms. Thiringer, 91 Wash.2d at 220, 588 P.2d 191. FIC's PIP policy was designed to be paid regardless of fault. FIC properly conceded at oral argument that even if Sherry were 100 percent negligent and injured himself, FIC would still have to pay Sherry the full PIP policy limits. It would be an odd result if FIC was entitled to recover the PIP benefits it paid to Sherry if he was only 70 percent at fault for his injury. In effect, Sherry would receive no benefit from the premium he paid for the PIP protection apart from early payment of medical bills, simply because he received a partial recovery under his separate UIM coverage.
¶ 28 FIC, for its part, relies on a Division One case, Tolson v. Allstate Insurance Company, 108 Wash.App. 495, 32 P.3d 289 (2001). In Tolson, the trial court determined that Allstate was entitled to recover an offset, or to deduct, the full amount of medical payments advanced to Tolson from the Allstate's UIM payment. Tolson, 108 Wash.App. at 499-500, 32 P.3d 289. Division One affirmed because Tolson was going to receive the full amount of his arbitration award. Tolson, 108 Wash.App. at 500, 32 P.3d 289. The court reasoned that Tolson would recover all his medical damages under the arbitrator's *928 award and that refunding the advanced medical payments would not alter that result. Tolson 108 Wash.App. at 500, 32 P.3d 289. He still recovered all of his medical expenses.
¶ 29 But Tolson does not resolve the issue of what happens when the insured person is partly at fault and recovers only part of his damages. The Tolson court based its rationale on Tolson receiving full compensation for his medical expenses. Here, in contrast, the arbitrator awarded Sherry only 30 percent of his total damages. Unlike in Tolson, Sherry will not recover all of his medical damages, and so, under Tolson's reasoning, he is not fully compensated.
¶ 30 FIC next turns to Peterson v. Safeco Insurance Company, 95 Wash.App. 254, 976 P.2d 632 (1999), a Division Three case. In that case, the insured, Peterson, was injured by an insured motorist who had a Safeco insurance policy with a $250,000 limit. Peterson, 95 Wash.App. at 257, 976 P.2d 632. He received $3,997.64 in PIP benefits. Peterson, 95 Wash.App. at 257, 976 P.2d 632. Peterson settled with the at-fault motorist's insurance company for $20,000. Peterson, 95 Wash.App. at 259, 976 P.2d 632. Peterson then argued that he was not fully compensated and so Safeco was not entitled to a reimbursement for the PIP benefits. Peterson, 95 Wash.App. at 260, 976 P.2d 632. The court indicated that the full compensation issue does not arise until the tortfeasor's readily accessible assets have been exhausted. Peterson, 95 Wash.App. at 260, 976 P.2d 632. FIC argues that because Sherry's UIM policy limit was $100,000, the arbitrator's $42,938.38 award did not exhaust Sherry's UIM policy limits and, therefore, Sherry cannot raise lack of full compensation to defeat FIC's right to reimbursement.
¶ 31 But Peterson also does not resolve the problem at issue here. As a practical matter, Sherry has exhausted all of his available assets. The UIM insurance provision only covers payments that an insured person is legally entitled to recover from the uninsured motorist. After the arbitrator's award, that amount can be only $42,938.38. Even after exhausting the only UIM benefits to which he is entitled, Sherry will be around $100,000 short of his total damages. Thus, Peterson's focus on the "available assets" does not resolve the question presented here.
¶ 32 Next, FIC argues that allowing Sherry to retain both his PIP and UIM payments would allow him a double recovery. FIC's argument is persuasive only if we accept FIC's assertion that the PIP benefits duplicate the arbitrator's UIM award.
¶ 33 FIC is correct that double recovery is inappropriate. Weyerhaeuser v. Commercial Union Ins. Co., 142 Wash.2d 654, 672, 15 P.3d 115 (2000). And the insurer has the burden of proving that an insured has received double recovery. Weyerhaeuser, 142 Wash.2d at 674-75, 15 P.3d 115.
¶ 34 But here, the PIP payments do not duplicate Sherry's UIM award. Sherry's total damages were $143,127.92, of which $53,127.92 was for medical expenses and $90,000 for general damages. The arbitrator reduced Sherry's UIM to $42,938.38 to account for Sherry's 70 percent fault in the accident. Assuming the arbitrator reduced both medical and general damages by 70 percent, Sherry received $15,938.38 in medical costs and $27,000 in general damages under his UIM coverage. Sherry's $10,000 PIP benefits for medical expenses bring the total medical expenses FIC paid to $25,938.38, well short of Sherry's total medical expenses of $53,127.92.
¶ 35 Assuming that lost wages were included in the arbitrator's general damage award, the same analysis applies to the $4,600 FIC paid for lost wages under the PIP provision. Sherry received $27,000 of his general damages in the arbitrator's UIM award. Adding the $4,600 lost wages portion of the PIP benefits, Sherry would have recovered only $31,600 of his $90,000 in general damages. Thus, Sherry's PIP benefits did not duplicate the UIM payments; he was not paid twice for the same injury.
¶ 36 FIC's most compelling argument is that the "full compensation" analysis is altered for an at-fault insured. Br. of Resp't at 15. Thiringer's language, the case that first announced the full compensation rule, facially supports FIC's position. In Thiringer, the court sought to insure "adequate indemnification of innocent automobile victims." *929 Thiringer, 91 Wash.2d at 220, 588 P.2d 191. But the court was "guided by the principle that a party suffering compensable injury is entitled to be made whole but should not be allowed to duplicate his recovery." Thiringer, 91 Wash.2d at 220, 588 P.2d 191 (emphasis added). "Compensable" means "[a]ble or entitled to be compensated for." BLACK'S LAW DICTIONARY 301 (8th ed.2004). The phrase "compensable injury" therefore means an injury for which an insured is entitled to be compensated. We therefore read Thiringer to apply the full compensation rule so long as an insured suffers any injury for which he is entitled to be compensated. We must therefore determine what part of Sherry's injury was compensable.
¶ 37 Division One has interpreted the language "compensable injury" to mean that the full compensation rule does not apply to situations in which there is no liable third party. Cook v. USAA Cas. Ins. Co., 121 Wash.App. 844, 848-49, 90 P.3d 1154 (2004). In Cook, an insurance carrier settled its subrogation claim with the defendants in a negligence action before the trial concluded. Cook, 121 Wash.App. at 846, 90 P.3d 1154. The jury returned a defense verdict, finding the defendant not negligent. Cook, 121 Wash.App. at 846, 90 P.3d 1154. The plaintiffs then filed a claim against the insurance carrier, arguing that it was not entitled to keep subrogation settlements until the plaintiffs were fully compensated. Cook, 121 Wash.App. at 847, 90 P.3d 1154. The court rejected the plaintiffs' claim to the subrogation settlements, finding that the prerequisite for applying the full compensation rule was a liable third party. Cook, 121 Wash.App. at 849, 90 P.3d 1154.
¶ 38 But Cook is distinguishable. In this case, there is a liable third party, the uninsured motorist who hit Sherry. And the arbitrator found that motorist 30 percent at fault. Therefore, Sherry suffered a compensable injury and is entitled to be made whole under the full compensation rule before FIC is entitled to any offset for PIP payments. Moreover, the Cook court did not address PIP benefits that are paid regardless of fault. Cook therefore does not resolve the issue of when a partially at-fault insured is fully compensated or whether an insurer is entitled to recover PIP payments from a partially at-fault insured who receives partial compensation under his UIM coverage. We must therefore determine whether FIC's UIM payment, representing the full amount that Sherry could legally recover from the partially at-fault uninsured motorist made Sherry whole for purposes of Thiringer.
¶ 39 FIC would have us assume that we should look to tort law concepts to determine what amount Sherry was entitled to recover in order to make him whole. And under our contributory fault negligence regime, he would be entitled to recover for only that part of the injury attributed to the tortfeasor. RCW 4.22.005. But we do not agree that this fault-based concept defines a compensable injury in the context of PIP.
¶ 40 This case turns on contract law, not tort law. FIC contracted with Sherry to provide PIP coverage. We therefore look at the contract to determine what was a compensable injury. In return for a separate PIP premium, FIC agree to pay Sherry for his medical costs and lost wages regardless of fault. Even if Sherry were completely at fault for his injuries, FIC would have to pay the full PIP limits. In other words, because FIC had to compensate Sherry for injuries caused even by his own negligence, all of Sherry's damages, including those attributable to his 70 percent fault, are "compensable injuries." He therefore would not be "fully compensated" until he receives all of his damages. Having written a policy that promised to pay for Sherry's damages regardless of fault, FIC cannot now use Sherry's fault as a rationale for seeking reimbursement of its no-fault PIP payments.
¶ 41 Thus, in order to see if Sherry was fully compensated, we would add his 30 percent recovery under the UIM coverage and the monies paid under the PIP policy. An offset for PIP benefits would then be required only if the combined UIM and PIP payments exceeded Sherry's total damages. Because, in this case, Sherry's total damages would not be exceeded, Sherry did not receive the double recovery that the Thiringer *930 court wished to avoid. Thiringer, 91 Wash.2d at 220, 588 P.2d 191.
¶ 42 In conclusion, PIP payments are not based on fault of the insured; they are payable regardless of the insured's fault,[3] and the application of the fault concept appropriate in UIM coverage is not applicable for determining offsets for PIP payments. The rule we announce in interpreting the coverage for "at-fault" insureds is that the insurer cannot offset PIP payments until the insured has been fully compensated for the total damages. Because Sherry was not fully compensated, the trial court erred in its determination that FIC was entitled to an offset and in deducting $8,256 from Sherry's arbitration award.
¶ 43 We also note that because FIC was not entitled to an offset, it is not required to pay a pro rata share of Sherry's attorney fees and litigation expenses. Mahler, 135 Wash.2d at 436, 957 P.2d 632.
¶ 44 Reversed and remanded for entry of judgment for Sherry's full arbitration award.
We concur: HUNT and PENOYAR, JJ.
NOTES
[1] This is an "offset" rather than a "reimbursement" because FIC is both the PIP insurer and the UIM insurer. An "offset" is the credit an insurer receives under one coverage for payments under another coverage in the same policy. Winters v. State Farm Mut. Auto Ins. Co., 144 Wash.2d 869, 876, 31 P.3d 1164, 63 P.3d 764 (2001). The difference in the terms is technical, but both refer to the right of an insurer to be reimbursed for payments already advanced.
[2] We note that it is irrelevant that FIC's policy had a reimbursement provision in both the PIP policy and the UIM policy. UIM provisions limiting coverage by the amount paid elsewhere are "valid only to the extent they serve as mechanisms to accomplish the PIP right to reimbursement." Hamm, 151 Wash.2d at 311 n. 4, 88 P.3d 395.
[3] Of course, we are not addressing excludable acts of the insured such as intentional acts such as racing or speed contests.