[No. 27604. Department One. November 4, 1939.]

PACIFIC INLAND TARIFF BUREAU, *Appellant*, v. FERD J. SCHAAF, *as Director of The Department of Public Service, Respondent.*[1]

[1]Reported in 95 P. (2d) 781.

*Neal, Brodie & Trullinger (John M. Hickson,* of counsel), for appellant.

*The Attorney General* and *Don Cary Smith, Assistant (Joseph Starin,* of counsel), for respondent.

MAIN, J.—This action was brought seeking injunctive relief covering the matter of tariff applicable to motor vehicle common carriers of freight, and to require the department to file a tariff prepared by the plaintiff. The trial resulted in a decree dismissing the complaint, from which the plaintiff appealed.

The appellant, Pacific Inland Tariff Bureau, is a corporation organized and existing under the laws of the state of Oregon, and qualified to do business in this state. Its principal business is to serve as a tariff agency for numerous common carrier auto freight operators, which operators are engaged in the transportation of freight for hire over the public highways of this state, and adjacent states, in interstate and intra-

state commerce. The appellant was employed by approximately one hundred and twenty-seven motor vehicle operators to compile and file tariffs, and these, when filed, if approved by the department, would become the official, lawful tariff. That was the practice prior to 1937. During that year, the legislature amended chapter 184 of the Laws of 1935, p. 883, by adding a new section following § 11, p. 889, thereof, to read as follows:

"Section 11-a. The department is hereby vested with power and authority, and it is hereby made its duty, to make, fix, construct, compile, promulgate, publish and distribute tariffs containing a compilation of rates, charges, classifications, rules and regulations to be used by all common carriers, as defined in this act, in this state. Such tariffs may be issued and distributed under rules and regulations to be adopted by the department. Such compilation and publication shall be made by the department as soon as possible after the effective date of this section, and may be made by compiling the rates, charges, classifications, rules and regulations now in effect, and may be amended or altered from time to time after notice and hearing, by issuing and distributing revised pages or supplements to such tariffs in accordance with the orders of the department. All such rates, charges, classifications, rules and regulations thus made effective by the department shall be available to the public at each agency and office of all common carriers, as defined in this act, operating within this state. Such compilation and publication shall be sold by the department for not to exceed ten dollars per copy. Supplements to such publications shall be furnished without charge: *Provided,* That copies may be furnished free to other regulatory bodies and departments of government and to colleges, schools and libraries. All copies of the compilation, whether sold or given free, shall be distributed under rules and regulations to be fixed by the department." Laws of 1937, chapter 166, p. 629, § 10 (Rem. Rev. Stat., Vol. 7A, § 6382-11a [P. C. § 234-13½kk]).

In pursuance of the authority given by this statute, the department, May 10, 1938, entered an order to the effect that, on and after July 15, 1938, the tariff No. 5, which was the department's tariff, should be the only lawful tariff governing the operation of all common carriers to the extent covered by the tariff, and that all other tariffs governing the same operations should be canceled as of the date of July 15, 1938. This order further provided:

"It is further ordered, that every common carrier whose operations are wholly or partly governed by the above named tariff is required to purchase and post for public inspection in its principal offices and at the main station or stations where freight is regularly received for transportation at least one copy of the Department of Public Service Tariff No. 5 on or before July 1, 1938."

The first question is whether the statute gives to the department the right to prepare and file a tariff and make it the exclusive, official, and legal tariff. The section of the statute is extensive, but it seemed necessary to set it out in full. When the statute is read and analyzed, it seems plain that the legislature intended that the tariffs prepared by the department should be the only official, lawful tariff. Prior to the passage of this statute, tariffs were filed by different tariff bureaus for different carriers, there being twenty such bureaus. Sometimes tariffs were filed by the operator, all of which became lawful tariffs when approved by the department. This situation gave rise to confusion, and it was difficult to determine, sometimes, what bureau a carrier had employed to file its tariff, or whether such carrier had any proper tariff on file with the department. It was to remedy this condition that the legislature passed the act above set out.

■   The next question is whether, if the statute be given the construction indicated, it offends against the due process clause of the fourteenth amendment to the Federal constitution.  It is contended that it does, because it tends to put a burden upon the appellant which it did not have prior to the passage of the statute.  The appellant had prepared tariff No. 7, which was the same, so far as tariff rate was concerned, as appeared in the department's tariff.

The appellant had no vested right to have its tariff filed, and, even though the ruling of the department did put a burden upon it, it does not necessarily follow that the department's order should be set aside.  The general rule is that no one has a vested right to be protected against consequential injuries arising from a proper exercise of rights by others.  This rule is especially applicable to injuries resulting from the exercise of public powers.

In 2 Cooley's Constitutional Limitations (8th ed.), 795, it is said:

"It is a general rule that no one has a vested right to be protected against consequential injuries arising from a proper exercise of rights by others.  This rule is peculiarly applicable to injuries resulting from the exercise of public powers.  Under the police power the State sometimes destroys, for the time being, and perhaps permanently, the value to the owner of his property, without affording him any redress.  The construction of a new way or the discontinuance of an old one may very seriously affect the value of adjacent property; the removal of a county or State capital will often reduce very largely the value of all the real estate of the place from whence it was removed; but in neither case can the parties whose interests would be injuriously affected, enjoin the act or claim compensation from the public.  The general laws of the State may be so changed as to transfer, from one town to another, the obligation to support certain individuals, who may become entitled to sup-

port as paupers, and the constitution will present no impediment."

The burden which the appellant claims was put upon it was consequential, and it has no constitutional right to complain of it.

The next question is whether the appellant has been denied any privileges or immunities which others may enjoy; and, in this connection, it invokes § 12 of Art. I of the constitution of this state, which provides that no law shall be passed granting to any citizen or class of citizens, or corporation other than municipal, "privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." The particular complaint is that the department, acting under the authority of the legislature, permits the railroad companies who are common carriers of intrastate freight, as well as interstate freight, to prepare and file their own tariffs, and these, when approved, become the official, lawful tariff.

There is a reasonable basis for the classification, even though both the railroads and the motor trucks are common carriers of freight. There are something over three thousand permit holders for the carrying of freight by motor vehicle, as compared with a very limited number (five major operators) of carriers by rail. In addition to this, the railroads operate under different conditions and with different problems.

In *Soon Hing v. Crowley,* 113 U. S. 703, 28 L. Ed. 1145, 5 S. Ct. 730, it is said:

"The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint because like restrictions are not imposed upon other business of a different kind. The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restric-

tions, or are held entitled to different privileges under the same conditions."

The next question is whether the department's order requiring copy of its tariff to be posted at the places that the order mentions, was enforcible against the carriers that the appellant represents. It must be remembered that the motor vehicle carriers operate entirely upon the highways of the state. The use of the highways for gain is an extraordinary use, which the state may prohibit or regulate. The highways of the state are public property. In *Prater v. Department of Public Service,* 187 Wash. 335, 60 P. (2d) 238, it was said:

"It may be said in passing, however, that they all recognize the underlying principle that the use of the highways for gain is an extraordinary use which the state may prohibit or regulate. *Packard v. Banton,* 264 U. S. 140, 44 S. Ct. 257; *Bradley v. Public Utilities Commission of Ohio,* 289 U. S. 92, 53 S. Ct. 577, 85 A. L. R. 1131; *Stephenson v. Binford, supra* [287 U. S. 251, 53 S. Ct. 181, 87 A. L. R. 721]. In the latter case, the rule was stated as follows:

" 'It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit.' "

The state, having the right to regulate or prohibit the use of its highways, may impose conditions upon that use, or authorize the same to be imposed, so long as the regulation is not arbitrary or capricious. We find nothing in the regulations here involved which could be said to be either arbitrary or capricious.

The decree will be affirmed.

BLAKE, C. J., MILLARD, ROBINSON, and SIMPSON, JJ., concur.