[No. 23396-7-II. Division Two. February 29, 2000.]

SARAH L. WINTERS, *Appellant*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Respondent*.

*Harold E. Winther* of *Harold E. Winther, P.S.*, for appellant.

*Martin Lowell Ziontz* of *Peizer, Richards & Ziontz, P.S.*, for respondent.

MORGAN, J. — Three questions are presented. (1) After a personal injury protection coverage (PIP) insured has fully recovered his or her damages, does a PIP insurer have a right to reimburse itself for its earlier PIP payments by deducting the amount of such payments from an underinsured motorist coverage (UIM) award, assuming its policy so provides? (2) Does a PIP insurer maintain this right even if it elects to subrogate against the at-fault tortfeasor? (3) Is a PIP insurer's right conditioned on its paying a pro rata share of costs and fees that the PIP insured reasonably incurred to recover full compensation? The answer to each question is yes.

On January 30, 1994, Winters was hit head-on by Anna Cunningham, then rear-ended by James Edalgo. Winters was injured.

Cunningham had liability insurance with Leader National Insurance Company. Her limits were $25,000. Edalgo was uninsured.

Winters had PIP coverage and UIM coverage through State Farm. Her PIP and UIM limits exceeded the amounts in issue here.

The Winters-State Farm policy provided that State Farm

could recover its PIP payments from money recovered by the insured, provided the insured was fully compensated first. Using "we" to mean State Farm, the policy stated that "[w]e are to be repaid our payments . . . out of any recovery[,]"[1] but that "[o]ur right to recover our payments applies only after the insured has been fully compensated for the bodily injury, property damage or loss."[2] The policy also stated that "[a]ny amount paid or payable for damages under the first party benefits coverage will not be paid again as damages under this [UIM] coverage."[3]

The Winters-State Farm policy also provided that State Farm would share in the expenses of obtaining a recovery under certain circumstances. The policy stated:

> If the insured recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. Our share is that per cent of the legal expenses that the amount we recover bears to the total recovery.[4]

Four proceedings took place after the accident. (1) State Farm paid Winters or her health care providers $8,271 under its PIP coverage. (2) Winters sued Cunningham. She settled for $25,000[5] and was paid that amount by Leader National. She did not share this recovery with State Farm.[6] (3) State Farm or its assignee sued Edalgo, recovering a

---

[1]Clerk's Papers at 238. The full sentence from which the quoted words are taken reads as follows: "We are to be repaid our payments, costs and fees of collection out of any recovery." State Farm has no costs or fees of collection here, because Winters made the recovery.

[2]Clerk's Papers at 239 (bold deleted).

[3]Clerk's Papers at 227.

[4]Clerk's Papers at 239 (bold deleted). A third sentence in the same paragraph provided, "This does not apply to any amounts recovered or recoverable by us from any other insurer under any interinsurer arbitration agreement." That sentence does not affect the circumstances present here. *Mahler v. Szucs*, 135 Wn.2d 398, 422-24, 957 P.2d 632 (1998).

[5]The parties agree that the settlement should be treated as if it were for $25,000, even though it may actually have been for slightly more than that.

[6]Winters correctly explains that "[u]nder the rule of *Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978), [she] retained the whole of the liability recovery, released Cunningham and her insurer, Leader [National In-

default judgment for $8,271, plus interest. The record does not show whether the judgment has been paid.[7] (4) Winters presented a UIM claim to State Farm. She and State Farm agreed that Cunningham and Edalgo were at fault, and that she was fault-free. The arbitrator awarded total damages of $40,271, including special damages of $8,271 and general damages of $32,000. The parties agreed that State Farm could deduct $25,000, representing Cunningham's liability limits. They disagreed on whether State Farm could deduct $8,271, representing recoupment of its earlier PIP payments. State Farm unilaterally recouped its PIP payments by paying only $7,000 on the UIM award ($40,271 award, less $25,000 liability limits and $8,271 previous PIP payments).

In June 1997, Winters sued State Farm for an additional $8,271. She claimed, in effect, that State Farm had no right to reimburse itself for its PIP payments by deducting those payments from her arbitration award. She also claimed, in the alternative, that State Farm had no right to reimburse itself unless it paid a pro rata share of the fees and costs she had reasonably incurred to litigate against Cunningham and arbitrate against State Farm (in other words, unless State Farm paid a pro rata share of the fees and costs she had reasonably incurred to recover her total damages). The trial court granted State Farm's motion for summary judgment and ordered Winters to pay $2,500 of State Farm's attorney fees.

I

■ Winters contends that State Farm had no right to unilaterally recoup its PIP payments from the UIM award. We disagree.

A PIP insurer has a right to be reimbursed for PIP payments made to a fault-free PIP insured, at least where its

---

surance Company], and presented a UIM claim to [State Farm]." Br. of Appellant at 13.

[7]Whether the judgment has or has not been paid is immaterial to this opinion.

policy so provides.[8] A PIP insurer may not enforce this right before the PIP insured has been fully compensated, but it may enforce the right after the PIP insured has been fully compensated.[9] When the right is otherwise enforceable, a PIP insurer may implement it by claiming against settlement proceeds in the hands of the insured;[10] by suing the tortfeasor in a separate action;[11] or, in a UIM case, by offsetting its previous PIP payments against a UIM award.[12] The underlying ideas are (1) that the fault-free PIP insured should be restored to his or her pre-accident position; (2) that the fault-free PIP insurer should be restored to its pre-accident position; and (3) that restoring the PIP insured to its pre-accident position is more important than restoring the PIP insurer to its pre-accident position.[13]

Here, State Farm's policy provided for reimbursement of PIP payments out of a UIM award, so long as Winters was fully compensated first. The policy provided that State Farm would be repaid its PIP payments "out of any recov-

---

[8]*Mahler,* 135 Wn.2d at 413, 417; *Keenan v. Industrial Indem. Ins. Co.,* 108 Wn.2d 314, 317, 738 P.2d 270 (1987), *overruled on other grounds by Price v. Farmers Ins. Co.,* 133 Wn.2d 490, 500, 946 P.2d 388 (1997); *Schrader v. Grange Ins. Ass'n,* 83 Wn. App. 662, 667-68, 922 P.2d 818 (1996), *overruled on other grounds by Price,* 133 Wn.2d at 500; *Taxter v. Safeco Ins. Co.,* 44 Wn. App. 121, 131, 721 P.2d 972 (1986); *compare Barney v. Safeco Ins. Co.,* 73 Wn. App. 426, 429-31, 869 P.2d 1093 (1994), *overruled on other grounds by Price,* 133 Wn.2d at 500.

[9]*Mahler,* 135 Wn.2d at 417-18, 436; *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wn.2d 133, 138 n.2, 930 P.2d 288 (1997); *Keenan,* 108 Wn.2d at 318-19; *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 555, 707 P.2d 1319 (1985); *Thiringer,* 91 Wn.2d at 219; *British Columbia Ministry of Health v. Homewood,* 93 Wn. App. 702, 712, 713-14, 970 P.2d 381 (1999); *Maziarski v. Bair,* 83 Wn. App. 835, 844, 924 P.2d 409 (1996); *Taxter,* 44 Wn. App. at 131.

[10]*Mahler,* 135 Wn.2d at 413, 415, 417-18.

[11]*Id.*

[12]*Keenan,* 108 Wn.2d at 317; *Maziarski,* 83 Wn. App. at 844, 845-46; *Schrader,* 83 Wn. App. at 667-68; *Barney,* 73 Wn. App. at 430-31; *Taxter,* 44 Wn. App. at 131. This list of collection devices is not intended to be exclusive. We do not consider whether the insurer can obtain reimbursement through other mechanisms also.

[13]*See Mahler,* 135 Wn.2d at 416-17 (citing *Thiringer,* 91 Wn.2d at 219-20); *Leader Nat'l Ins. Co. v. Torres,* 113 Wn.2d 366, 372, 779 P.2d 722 (1989) (citing *Thiringer*).

ery[,]"[14] but "only after the insured has been fully compensated for the bodily injury, property damage or loss."[15] The policy also provided that "[a]ny amount paid or payable for damages under [PIP] coverage will not be paid again as damages under this [UIM] coverage."[16] In addition, State Farm reimbursed itself only after Winters had been fully compensated. By the time it took the $8,271 out of the UIM award, Winters had received her total damages of $40,271 ($8,271 in PIP payments, $25,000 in liability proceeds, and $7,000 in UIM proceeds). We conclude that State Farm was entitled to reimburse itself in the manner that it did—subject to Section III of our discussion.

## II

■ Winters contends that State Farm lost its right to reimbursement by attempting to subrogate against Edalgo. We disagree.

As already noted, Washington's public policy is to return the PIP insurer to its pre-accident position, provided that the PIP insured is fully compensated first. This is a corollary of the more general proposition that the loss should be borne by the person at fault, as opposed to the fault-free PIP insured or the fault-free PIP insurer.[17] When we allow a PIP insurer to reimburse itself, we allow it to pay the insured's medical bills once rather than twice, but we do not return it to its pre-accident position; it will still have paid the bills once. To return the PIP insurer to its pre-accident position, we *additionally* must allow it to recover the amount of the insured's bills from the at-fault tortfea-

[14]Clerk's Papers at 238.

[15]*Id.* at 239 (bold deleted).

[16]*Id.* at 227.

[17]*See Mahler,* 135 Wn.2d at 413. It states: "In a typical case of a fire loss, upon payment of the loss to the insured, the property insurer would be subrogated to the extent of its payment to the remedies of the insured against the party that caused the loss. This traditional application of subrogation principles is in accord with the policy of allocating to the causer of the loss the cost of reimbursing the person (the insurer) who paid for the loss." *See also Mahler,* 135 Wn.2d at 415 n.8.

sor. A PIP insurer's right to reimbursement is not affected by bringing a subrogation suit against the at-fault tortfeasor, and State Farm's right was not affected by its suit against Edalgo.

## III

■■ Winters contends that even if State Farm has the right to reclaim its PIP payments by offsetting them against her UIM award, it must pay its "pro rata share of the legal costs and expenses, including attorney's fees, incurred by [her] in the prosecution of [her] liability and UIM claims."[18] This is true, she says, because "[t]he arbitration award of $40,271.86 created the common fund from which the defendant . . . withheld . . . its PIP advancements."[19] The common fund doctrine provides that when one person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate that fund.[20]

Two recent cases implicate the common fund doctrine. In *Mahler v. Szucs*,[21] a fault-free plaintiff was injured in an auto accident. Her damages totaled $24,000.[22] The PIP insurer made PIP payments of $4,000. Thereafter, the plaintiff obtained liability proceeds of $24,000, an amount

---

[18]Br. of Appellant at 42.

[19]*Id.* at 39.

[20]*Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995); *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 70-71, 847 P.2d 440 (1993); *Leischner v. Alldridge*, 114 Wn.2d 753, 756-57, 790 P.2d 1234 (1990); *Miotke v. City of Spokane*, 101 Wn.2d 307, 339, 678 P.2d 803 (1984) (quoting *Public Util. Dist. No. 1 v. Kottsick*, 86 Wn.2d 388, 390-91, 545 P.2d 1 (1976)); *Painting & Decorating Contractors, Inc. v. Ellensburg Sch. Dist.*, 96 Wn.2d 806, 815, 638 P.2d 1220 (1982); *Seattle Trust & Sav. Bank v. McCarthy*, 94 Wn.2d 605, 612, 617 P.2d 1023 (1980).

[21]135 Wn.2d 398, 957 P.2d 632 (1998).

[22]Mahler settled for either $24,250 or $24,500. (Compare the text at 135 Wn.2d at 406, which states $24,250, with footnote 2, which states $24,500.) The Supreme Court commented, "[T]here is no question in this case that the insureds [Mahler and the insured in an unrelated case] were both fully compensated by the settlements[.]" *Mahler*, 135 Wn.2d at 428. Necessarily, then, Mahler's total damages were either $24,250 or $24,500. For convenience, we round off to $24,000. Also for convenience, we round off the other numbers in the case.

equal to her total damages. In accordance with *Thiringer v. American Motors Insurance Company*,[23] holding that a PIP insurer can obtain reimbursement only after the PIP insured is compensated, the PIP insurer then claimed $4,000 of the liability proceeds as reimbursement for its PIP payments. The plaintiff agreed to share the liability proceeds—she would take $20,000 and the PIP insurer could take $4,000—on condition that the PIP insurer pay a pro rata share of the fees and costs that she had reasonably expended to obtain the liability proceeds.[24] The PIP insurer disputed the condition, but the Supreme Court upheld it. Although the court relied primarily on the language of the policy before it, it also seems to have reasoned that the plaintiff generated a fund of money from the tortfeasor (i.e., the liability proceeds); that the plaintiff was being compensated for her damages out of that fund ($20,000); and that the PIP insurer was being reimbursed out of that fund ($4,000). Thus, each party was benefiting from the fund, and each party was obligated to pay its pro rata share of the fees and costs reasonably incurred to generate the fund, in accordance with the "equitable sharing rule" known as "the common fund doctrine."[25] Given that the policy language and the common fund doctrine yielded the

---

[23]91 Wn.2d 215, 588 P.2d 191 (1978).

[24]This split would have returned each party to its pre-accident position. The PIP insurer would have been reimbursed in full, and the PIP insured would have been fully compensated by receiving $4,000 in PIP proceeds plus $20,000 in liability proceeds.

[25]*Mahler*, 135 Wn.2d at 426-27. The *Mahler* court also noted that according to general principles of equity,

> [i]t is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share.

*Mahler*, 135 Wn.2d at 425-26 n.17 (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85 at 335 (1981)); *see also Peterson v. Safeco Ins. Co.*, 95 Wn. App. 254, 264, 976 P.2d 632 (1999).

same result, the court did not reach whether the common fund doctrine could be "varied by contract."[26]

In *Peterson v. Safeco*,[27] the plaintiff received $4,000 in PIP payments from his own PIP insurer. He later recovered his total damages of $20,000 from the adequately insured tortfeasor.[28] The PIP insurer then sought $4,000 of the $20,000 as reimbursement for its earlier PIP payments. The plaintiff responded in part that if he had to reimburse the insurer, the insurer had to pay its pro rata share of the fees and costs he had reasonably expended to recover the $20,000. Following *Mahler*,[29] Division Three held that the plaintiff's "efforts resulted in a common fund which benefits Safeco," and that "Safeco is therefore obligated to pay a proportionate share of Mr. Peterson's attorney fees."[30]

*Mahler* and *Peterson* involved adequately insured tortfeasors. This case involves an underinsured tortfeasor. The task at hand, then, is to analyze whether and how the common fund doctrine applies when, in a UIM case, a PIP insurer seeks reimbursement. To do that, we (A) define the relevant common fund and (B) apply the definition to this case. After that, we examine a tangential argument made by State Farm.

## A

A fault-free PIP insured[31] creates a common fund when, after receiving PIP payments, he or she recovers full

---

[26]*Mahler*, 135 Wn.2d at 425 n.16.

[27]*Peterson*, 95 Wn. App. 254, 976 P.2d 632 (1999).

[28]Although the plaintiff claimed that his total damages were more than $20,000, Division Three ruled that he had been fully compensated when he received the $20,000. *Peterson*, 95 Wn. App. at 259-61.

[29]*Id.* at 263-64 ("*Mahler* court then went on to conclude that a recovery which includes the insurer's PIP benefits creates a common fund").

[30]*Id.* at 264.

[31]Nothing in this opinion considers or addresses the at-fault PIP insured. Moreover, we assume throughout our opinion that the applicable insurance policy

compensation from the tortfeasor. Because the PIP insured has now received his or her total damages *plus the PIP payments*, he or she must now reimburse the PIP carrier out of the money recovered, which is the same as to say that the PIP insured and the PIP insurer must share the money recovered.[32]

When a fault-free PIP insured creates a common fund in a case with an adequately insured tortfeasor, the common fund (i.e., the PIP insured's full compensation) consists entirely of liability proceeds (money recovered from the tortfeasor's liability carrier). The liability carrier stands in the tortfeasor's shoes, and its payments are treated as if the tortfeasor made them.

When a fault-free PIP insured creates a common fund in a case with an underinsured tortfeasor, the common fund (i.e., the PIP insured's full compensation) consists in part of liability proceeds (money recovered from the tortfeasor's liability carrier) and in part of UIM proceeds (money recovered from the PIP insured's UIM carrier). The UIM carrier stands in the tortfeasor's shoes when it pays, and its payments are treated as if made by the tortfeasor.[33] The underlying principle is that "liability and UIM insurance, working together, are intended to fully compensate claimants for those amounts that they are legally entitled to recover from liable tortfeasors, up to the sum of applicable li-

---

provides, in one form or another, for reimbursing PIP payments by deducting such payments from a UIM award.

[32]Parenthetically, a common fund of this sort does not include the PIP payments themselves. By definition, it is limited to money from which the PIP payments may be *reimbursed*.

[33]*Jain v. State Farm Mut. Auto. Ins. Co.*, 130 Wn.2d 688, 695, 926 P.2d 923 (1996) ("UIM is meant to place the injured's insurance carrier in the shoes of the underinsured tortfeasor."); *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994) ("[T]he insurance carrier stands in the shoes of the uninsured motorist to the extent of the carrier's UIM policy limits."); *Ellwein v. Hartford Accident & Indem. Co.*, 95 Wn. App. 419, 424, 976 P.2d 138 ("A UIM carrier stands in the shoes of the uninsured motorist to the extent of the carrier's policy limits"), *review granted*, 139 Wn.2d 1008 (1999); *Urban v. Mid-Century Ins.*, 79 Wn. App. 798, 807, 905 P.2d 404 (1995) (where tortfeasor does not have insurance the UIM insurer "steps into the shoes of the tortfeasor"), *review denied*, 129 Wn.2d 1030 (1996).

ability and UIM limits."[34] These principles are what caused us, in Section I above, to hold that State Farm is entitled to reimbursement in this case.

State Farm's position, essentially, is that we should not combine liability proceeds and UIM proceeds when defining the common fund relevant to a UIM case. If we were to adopt this position, however, State Farm would not be entitled to reimbursement in the first instance, and it should pay Winters the entire $8,271 that she claims.

Three examples illustrate. (1) Suppose that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of $25,000. The PIP insurer pays $8,000 in PIP proceeds. The other driver pays his $25,000 liability limits pursuant to settlement or verdict. Because the PIP insured has not received funds in excess of her total damages—she has received only $33,000 ($8,000 in PIP proceeds and $25,000 in liability proceeds) of the necessary $40,000—the PIP insurer is not entitled to reimbursement at all, and there can be no "common fund."

(2) Suppose alternatively that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of only $25,000. The PIP insurer pays $8,000 in PIP proceeds. The PIP insured's carrier pays $15,000 in UIM proceeds ($40,000 total damages less the tortfeasor's liability limits of $25,000). Because the PIP insured has not received funds in excess of her total damages—she has received only $23,000 ($8,000 in PIP proceeds and $15,000 in UIM proceeds) of the necessary $40,000—the PIP

---

[34]*Allstate Ins. Co. v. Dejbod*, 63 Wn. App. 278, 283, 818 P.2d 608 (1991); *see also Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 87, 794 P.2d 1259 (1990) ("We have construed the purpose of the [UIM] statute as allowing an injured party to recover those damages which the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated underinsured motorist coverage limits.") (citation omitted); *Britton v. Safeco Ins. Co.*, 104 Wn.2d 518, 531, 707 P.2d 125 (1985).

insurer is not entitled to reimbursement at all, and there can be no "common fund."

(3) Suppose, again alternatively, that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of only $25,000. The PIP insurer pays $8,000 in PIP proceeds. The other driver pays his liability limits of $25,000. The UIM insurer (who is also the PIP insurer) owes $15,000 in UIM proceeds ($40,000 total damages less the tortfeasor's liability limits of $25,000). Because the PIP insured is now fully compensated—she has received $48,000 ($8,000 in PIP proceeds, $25,000 in liability proceeds, and $15,000 in UIM proceeds) even though she needs only $40,000 to be fully compensated—the PIP insurer is entitled to reimbursement; there can be a "common fund" for the first time; and the "common fund" is comprised of *the combination* of liability proceeds and UIM proceeds.

We would define the relevant common fund in this same way under Winters' policy language. That language states, as already seen, that "if the insured recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses." In a UIM case, for the reasons just discussed, recovery "from the party at fault" necessarily includes money paid by the tortfeasor's liability carrier (who stands in the tortfeasor's shoes) and money paid by the PIP insured's UIM carrier (who also stands in the tortfeasor's shoes). Otherwise, the PIP insured will not have been fully compensated; the PIP insurer will not be entitled to reimbursement in the first instance; and the question of sharing expenses will not arise. As in *Mahler*, we have no occasion to consider whether the common fund doctrine

would prevail over policy language in the event of a conflict.[35]

## B

Having defined the common fund relevant to a UIM case as being comprised in part of liability proceeds and in part of UIM proceeds, we hold that the fund relevant here is comprised of (a) the money that Winters recovered from Leader National ($25,000) *plus* (b) the money that Winters was awarded from State Farm ($15,271). If we were to hold otherwise, as discussed above, State Farm would not be entitled to reimbursement in the first instance, and it should pay Winters the remainder of her UIM award ($8,271).

The next question is whether the entire common fund was created through Winters' efforts. We hold that it was. Both the suit against Cunningham and the arbitration against State Farm were adversary proceedings, and neither would have borne fruit but for Winters' efforts.

The last question is whether the fund was shared by Winters and State Farm. We hold that it was. After Winters recovered $40,271 in liability and UIM proceeds, State Farm recouped its earlier PIP payments by offsetting such payments against Winters' arbitration award. It could just as well have started an interpleader or declaratory judgment action; paid the entire amount of the UIM proceeds ($15,271) into court or a private trust account; agreed to an order disbursing $7,000 to Winters; and sought an order giving it the remainder. The overall effect was to split the $40,271 that Winters had recovered through litigation and arbitration, $32,000 to Winters and $8,271 to State Farm. As a result, State Farm must now pay its pro rata share (8,271 ÷ 40,271) of the fees and costs reasonably incurred

---

[35]*See Mahler,* 135 Wn.2d at 425 n.16.

by Winters to litigate against Cunningham and arbitrate against State Farm.

## C

Notwithstanding State Farm's argument to the contrary, nothing we have said conflicts with *Dayton v. Farmers Insurance Group*.[36] The question in *Dayton* was whether a UIM carrier, after acknowledging UIM coverage but denying a UIM claim, had to pay the insured's reasonable attorney's fees under the *Olympic Steamship*[37] case.[38] The question in this case is whether a PIP carrier must pay a share of the insured's fees as a condition of obtaining reimbursement for PIP payments. *Dayton*'s holding has nothing to do with a PIP reimbursement claim, for it applies in a UIM case whether or not PIP payments were made and whether or not PIP reimbursement is sought. Conversely, the holding here has nothing to do with a UIM claim, because it depends entirely on a proper PIP reimbursement claim. To say that a PIP carrier must pay a share of fees under *Mahler* is to leave unaffected a UIM carrier's duty (or lack of duty) to pay fees under *Olympic Steamship*.

## IV

■ The trial court awarded State Farm its reasonable attorney's fees under RCW 4.84.250-.290. RCW 4.84.250 provides that "in any action for damages where the amount pleaded by the prevailing party . . . is [$10,000] or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees." RCW 4.84.270 provides, by necessary implication, that a defendant does not prevail if the plaintiff recovers more than the defend-

---

[36]124 Wn.2d 277, 282, 876 P.2d 896 (1994).

[37]*Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

[38]*Dayton*, 124 Wn.2d at 280-82.

ant's pretrial offer of settlement. That is the case here, so the award of attorney's fees is reversed.

The judgment is affirmed in part and reversed in part. On remand, the trial court shall order State Farm to pay its pro rata share ($8,271 \div 40,271$) of the costs and attorney fees reasonably incurred by Winters to recover full compensation for her damages, which is to say costs and attorney fees reasonably incurred to litigate against Cunningham and arbitrate against State Farm.

BRIDGEWATER, C.J., and SEINFELD, J., concur.

Reconsideration denied April 5, 2000.

Review granted at 141 Wn.2d 1018 (2000).