8 P.3d 304 (2000)
SAFECO INSURANCE COMPANY, Respondent,
v.
Denise Brackett WOODLEY, Appellant.
No. 45841-8-I.
Court of Appeals of Washington, Division 1.
July 17, 2000.
Publication Ordered August 31, 2000.
*305 Susan Machler, Simeon Osborn, Osborn, Law Firm, Seattle, for Appellant.
J. Robert Leach, Anderson Hunter Law Firm, Everett, for Respondent.
COLEMAN, J.
Denise Woodley appeals a declaratory judgment permitting her insurer to offset her underinsured motorist benefits with the benefits the insurer had already paid under the medical and personal injury protection provisions of her policy and the full amount of her recovery from the tortfeasor's insurer. She contends that the offsets impermissibly reduce the underinsured motorist coverage mandated by RCW 48.22.030(3), that her policy did not unambiguously permit offsets for medical and personal injury protection payments, and that Safeco waived its right to offset these amounts. We conclude that Safeco is entitled to the offsets under Woodley's policy and did not waive this right. Because Woodley remains fully compensated by the reduced award, we affirm the trial court's decision below.

FACTS
Woodley was injured by a negligent motorist whose liability insurance had a $300,000 limit. She received this amount from the tortfeasor's insurer and $56,435 in medical and personal injury protection (PIP) benefits from her own insurer, Safeco Insurance Company. Claiming that her total damages exceeded $2 million, Woodley demanded further payment from Safeco up to the $1 million available under her underinsured motorist (UIM) coverage or arbitration under the policy. The parties agreed that Woodley was not at fault and was entitled to recover under her UIM coverage, but disagreed as to the amount of her damages. The arbitration *306 panel ultimately awarded Woodley $450,000 in "total damages."[1]
The day after the arbitrators' decision, Safeco informed Woodley that it intended to offset the award with the $300,000 she recovered from the tortfeasor and the medical and PIP benefits Safeco had previously paid. Woodley's UIM coverage authorized an offset for "all sums paid" by the tortfeasor.[2] Her medical and PIP coverage provided that payments made under those sections "shall be applied toward" any judgment or award the insured received under her UIM coverage.[3] After receiving no response, Safeco tendered Woodley a check for $93,565, the amount of the arbitration award less the offsets. Five months later, Woodley moved to confirm the award. She did not dispute the deduction for the tortfeasor's direct payment but contested the medical and PIP offsets, claiming that the arbitrators had awarded her only general damages and future wage loss. The trial court confirmed the award with a reduction for the undisputed $300,000 offset, but refused to offset the medical and PIP payments.
On appeal, another panel of this court reversed, holding that Safeco was entitled to the medical and PIP offsets and the trial court erred in refusing to reduce the award. Woodley v. Safeco Ins. Co., 84 Wash.App. 653, 1997 WL 18551, vacated and withdrawn, 953 P.2d 822 (1998). This opinion was later withdrawn and the case remanded in light of the Supreme Court's decision in Price v. Farmers Ins. Co., 133 Wash.2d 490, 946 P.2d 388 (1997). In Price, the court held that in a proceeding to confirm an arbitration award, the trial court lacked jurisdiction to determine the propriety of PIP offsets, an issue that was not submitted to the arbitrators. The Price court indicated that such issues must be resolved by agreement or in a separate action under the trial court's general jurisdiction, noting that the insurer bore the burden of demonstrating that a coverage dispute existed which precluded entry of judgment on the arbitration award. Price, 133 Wash.2d at 501-02, 946 P.2d 388.
After Safeco commenced this declaratory judgment action, the trial court found that Safeco was entitled to offset the full amount of the tortfeasor's payment and its medical and PIP payments. The trial court ruled that the arbitration award included all damages caused by the accident, including losses for which Safeco had made payments under the medical and PIP coverage, and thus Woodley would receive a double recovery if offsets for these benefits were not made. Woodley appeals.

DISCUSSION
First, Woodley argues that Price should be overruled, contending that the decision will increase litigation between insurers and insureds and eliminate the many benefits of arbitration by imposing impractical, laborious, and costly burdens on UIM coverage disputes. We are bound, however, by the holding in Price and cannot overrule that court's decision.
*307 Woodley further claims that the provisions in her policy which permit the insurer to offset medical and PIP payments from her UIM recovery violate RCW 48.22.030(3), relying on Britton v. Safeco Ins. Co. of Am., 104 Wash.2d 518, 707 P.2d 125 (1985). In Britton, our Supreme Court held that an insurer could not offset a UIM award with the insured's government disability benefits, emphasizing that the disability benefits are a direct statutory entitlement and thus cannot be offset absent specific statutory authorization. Britton, 104 Wash.2d at 532, 707 P.2d 125. In a subsequent decision, however, the court specifically "decline[d] to extend Britton to cases ... where the offset or reimbursement involves contractually provided PIP benefits and the purpose is to avoid a double recovery." Keenan v. Industrial Indem. Ins. Co., 108 Wash.2d 314, 321, 738 P.2d 270 (1987), overruled on other grounds by Price, 133 Wash.2d 490, 946 P.2d 388.
In Keenan, 108 Wash.2d at 317-22, 738 P.2d 270, the court permitted the insurer to offset a UIM award with paid PIP amounts, holding that the offset does not reduce UIM coverage in violation of RCW 48.22.030 if the insured remains fully compensated.[4] The court further rejected the insured's argument that the offset would produce a "windfall" for the insurer in additional premiums, noting that the coverages insured against different risks.[5]Keenan, 108 Wash.2d at 321-22, 738 P.2d 270. Thus, Keenan directly addressed the question of whether contractual PIP offsets violate the UIM statute when the insured remains fully compensated.
Woodley asserts that Keenan is distinguishable. She does not, however, explain how the language of the policy at issue in Keenan differs in relevant ways from the coverages at issue here or why the court's analysis should not be applied in this case. Instead, she relies on cases from other jurisdictions that, she contends, support her argument. Many of the cases Woodley cites have since been clarified or overruled to permit insurers to offset UIM awards with paid PIP or similar, no-fault benefits when the insured would otherwise receive a double recovery. See Ostransky v. State Farm Ins. Co., 252 Neb. 833, 566 N.W.2d 399 (1997); Schultz v. Farmers Ins. Group of Cos., 167 Ariz. 148, 805 P.2d 381 (1991); Ruder v. West America Ins. Co., 151 Ind.App. 433, 280 N.E.2d 68 (1972); see also Keenan, 108 Wash.2d at 319, 738 P.2d 270 (citing Tucci v. State Farm Ins. Co., 503 Pa. 447, 469 A.2d 1025 (1983); Hartford Accident & Indem. Co. v. Lackore, 408 So.2d 1040 (Fla.1982); and Bradley v. Mid-Century Ins. Co., 409 Mich. 1, 294 N.W.2d 141, 20 A.L.R.4th 1069 (1980)). In Keenan, the court acknowledged that other jurisdictions do not permit such offsets, but it found those cases to be unpersuasive. See Keenan, 108 Wash.2d at 320, 738 P.2d 270 (citing Grange Mut. Cas. Co. v. Lindsey, 22 Ohio St.3d 153, 489 N.E.2d 281 (1986); Newton v. Nationwide Mut. Fire Ins. Co., 197 Colo. 462, 594 P.2d 1042 (1979); and Van Tassel v. Horace Mann Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973)). Thus, Woodley's reliance on these cases does not advance her argument.
Woodley also suggests that the UIM section of her policy does not permit medical or PIP offsets. These offsets are authorized, however, in the medical and PIP sections, which state that benefits received under those sections "shall be applied toward" her UIM recovery. Because the policy is construed as a whole, the location of these provisions in the medical and PIP sections, rather than the UIM section, is immaterial. See *308 Wood, 97 Wash.App. at 727, 986 P.2d 833; Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 575, 964 P.2d 1173 (1998). Woodley further argues that the medical and PIP sections' offset provisions are ambiguous. She does not, however, suggest an alternative interpretation of the provisions that would raise an ambiguity regarding their effect. As noted above, both the medical and PIP sections provide that benefits received under those sections "shall be applied toward" the insured's UIM recovery. In reading this language, the average person purchasing insurance would understand that medical and PIP benefits paid under the policy will reduce the insured's UIM recovery. Therefore, we reject the argument that the provisions are ambiguous.
Woodley next contends that the policy limits the insurer's right to recover PIP payments through a UIM offset when the insured has incurred substantial costs and attorney fees in pursuing a liability action, citing the following paragraphs from the PIP coverage section:
Our Right to Recover Payment
1. If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another we shall then have that right....
2. If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.
3. [W]e will not exercise our right of recovery if doing so reduces the covered person's payments, from all sources, below the loss and expenses incurred.
She concedes, however, that these paragraphs address the insurer's right to reimbursement out of the insured's recovery from the tortfeasor. Safeco did not attempt to recover its PIP payments from Woodley's liability settlement and, in fact, waived this right.[6] Thus, the reimbursement provisions are not implicated here. Woodley also argues that allowing Safeco to offset both the PIP payments and the liability settlement results in a "double recover[y]" for the insurer because Safeco has a subrogation lien against the liability settlement. But as noted above, Safeco waived its subrogation rights and thus is only entitled to recover the PIP payments from the insured through a UIM offset.
Woodley finally argues that Safeco provided no evidence that the PIP payments were for necessary expenses or injuries that were caused by the collision, citing Safeco's own assertions at arbitration that some of the expenses were not caused by the accident. Thus, she contends, the UIM award should not be reduced by the PIP payments. But without this offset, Woodley's recovery would exceed her total damages, as determined at the UIM arbitration. Nothing in the UIM statute entitles the insured to receive more than the total damages resulting from the collision. See Keenan, 108 Wash.2d at 321, 738 P.2d 270 ("The injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist."). To the extent Safeco mistakenly paid benefits for injuries that were not caused by the collision, the insurer would still be entitled to recover those payments. Keenan, 108 Wash.2d at 317 n. 1, 738 P.2d 270. We conclude that the trial court did not err in reducing the UIM award by the amount of PIP benefits Safeco had paid.
Waiver
Woodley also claims that Safeco is not entitled to deduct the medical and PIP payments because it waived its right to make the offsets. Waiver is the voluntary and intentional relinquishment of a known right. Saunders v. Lloyd's of London, 113 Wash.2d 330, 339, 779 P.2d 249 (1989). In her argument, Woodley relies solely on an October 1994 letter in which Safeco confirmed its *309 intent to waive its "PIP subrogation lien as a result of The Hartford's payment of their full liability limits of $300,000." As discussed above, this letter does not address Safeco's right to reduce the UIM award, which Safeco had already asserted by notifying Woodley and deducting these amounts from its UIM payment.
Woodley provides no additional analysis to support her argument but merely cites Morrissette v. Continental Life & Accident Co., 9 Wash.App. 789, 514 P.2d 1391 (1973). In Morrissette, an insurance coverage action, the court rejected the insured's waiver argument, stating, "An insurance contract may be varied by operation of law through estoppel or waiver, but this variance must be construed narrowly." Morrissette, 9 Wash.App. at 791, 514 P.2d 1391. Here, there is no evidence that Safeco intended to waive its right to make the UIM offsets. In fact, the letter cited by Woodley is consistent with Safeco's attempt to recover the PIP payments through a UIM offset, rather than from the liability settlement. Therefore, we reject this argument as well.
Liability Settlement Offset
Woodley next argues that the provisions in Safeco's policy that permit the insurer to offset her full recovery from the tortfeasor violate RCW 48.22.040(3), which provides the UIM insurer with a right of reimbursement from "the proceeds of any settlement or judgment" the insured obtained against the tortfeasor. Woodley contends that in referring to the "proceeds" of a liability action, the statute limits any UIM offset to the insured's net recovery. In addition, relying on this definition of the term, Woodley contends that because her policy refers to a UIM offset both for "all sums paid" and for "the proceeds" of any recovery from the tortfeasor, the policy does not unambiguously permit Safeco to offset the full amount of her settlement.
In support of this argument, Woodley relies solely on Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998), in which the court held that a PIP carrier was required to pay a portion of the insureds' expenses in recovering from the tortfeasor before obtaining reimbursement from the insureds' liability settlement or judgment. The policy in Mahler specifically provided that the insurer would pay a share of the insured's expenses if the insured recovered from the tortfeasor and the insurer shared in the recovery. Mahler, 135 Wash.2d at 419, 957 P.2d 632. In rejecting the insurer's argument that sharing the costs of recovery would, in effect, provide counsel in the liability action with a second fee, the court observed,
In Mahler, for example, counsel received a contingent fee from the overall recovery and placed an amount representing State Farm's PIP payments into Mahler's trust account. Counsel has already been fully compensated pursuant to the fee agreement. The money in trust, the settlement proceeds, belongs entirely to Mahler. State Farm, pursuant to Paragraph b [of Mahler's policy], has a chose in action against that money, less Mahler's reasonable expenses in recovering it, as reimbursement for its PIP payments pursuant to Paragraph b.
Mahler, 135 Wash.2d at 429, 957 P.2d 632. Woodley relies on this passage to support her argument.
In Mahler, however, the court found that State Farm was responsible for Mahler's litigation costs because the insurer was obligated, under its policy, to pay a portion of these costs before it could obtain reimbursement from Mahler's recovery. Mahler did not involve a UIM coverage dispute and did not address the extent of the UIM insurer's responsibility to its insured or the insurer's right to reimbursement under RCW 48.22.040(3). Woodley cites no additional authority that supports her argument that a UIM award must include the costs and fees incurred in obtaining a liability settlement or judgment.[7] She concedes, however, *310 that she would not recover fees in a liability action against a tortfeasor who was adequately insured. The purpose of the UIM statute is to place the injured insured in the same position as if the tortfeasor carried adequate liability insurance. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 281, 876 P.2d 896 (1994). Woodley does not articulate why she should recover the costs of obtaining a settlement in these circumstances, and neither existing case law nor the UIM statute supports this contention. Therefore, we conclude that the trial court did not err in deducting the full amount of the liability settlement from her award.
For the reasons discussed above, we affirm the decisions of the trial court. Woodley has requested attorney fees for the litigation following the UIM arbitration under Olympic S.S. Co., Inc. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991). Because Woodley has not prevailed on her claims, she is not entitled to an award of fees.
KENNEDY, J., and BECKER, A.C.J., concur.
NOTES
[1] The award states:

"We, the undersigned arbitrators, hereby find Denise Brackett Woodley is entitled to an award of damages as a result of the motor vehicle accident of July 17, 1991, and that Denise Brackett Woodley's total damages caused by the accident of July 17, 1991 are in the sum of Four Hundred Fifty Thousand Dollars ($450,000)."
[2] The UIM section of Woodley's policy provides:

"Any amounts otherwise payable for damages which the covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an accident shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy."
[3] The medical payments coverage section states:

"LIMIT OF LIABILITY
"....
"Any payment made under this coverage shall be applied toward any settlement or judgment the injured person receives under any Liability or Underinsured Motorists Coverage provided by this policy." Similarly, the PIP section provides: "Any payment made under this optional coverage to a covered person shall be applied toward any settlement or award the injured person receives under any Liability or Underinsured Motorists Coverage provided by this policy. However, if the Liability or Underinsured Motorists Coverage limits are exhausted, insurance provided by this coverage may be applied as excess insurance."
[4] Following Keenan, Division Two recently held that the validity of PIP offsets from UIM recovery is not affected by the existence of a statute making the availability of such coverage mandatory. Wood v. Mutual of Enumclaw Ins. Co., 97 Wash. App. 721, 986 P.2d 833 (1999).
[5] The court noted:

"PIP coverage and underinsured motorist coverage protect against two different risks. The PIP coverage guaranteed payment of certain special damages following an automobile accident, regardless of whether the insured or the other driver was at fault. The underinsured motorist coverage, on the other hand, guaranteed payment of both special and general damages, but only if the other driver was at fault. The two coverages overlap at one point-payment of certain special damages when the other driver was at fault. Only at this point does the PIP reimbursement clause operate to deny plaintiff recovery under both coverages." Keenan, 108 Wash.2d at 322, 738 P.2d 270.
[6] In October 1994, Safeco sent the tortfeasor's attorney confirmation of its intent to waive its "*PIP subrogation lien as a result of The Hartford's payment of their full liability limits of $300,000."
[7] As a supplemental authority, Woodley cites Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 994 P.2d 881 (2000), in which the court held that the insurer had to pay a portion of the costs Winters incurred in litigating against the tortfeasor and in arbitrating her UIM claim. As in Mahler, however, the policy at issue in Winters contained a provision in which State Farm agreed to share the insured's expenses in recovering from the tortfeasor if the insurer shared in the recovery. See Winters, 99 Wash. App. at 605, 994 P.2d 881. Thus, the case does not affect our analysis of the issues raised here.