211 P.3d 430 (2009)
LOC THIEN TRUONG, Appellant,
v.
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, Respondent.
No. 61202-6-I.
Court of Appeals of Washington, Division 1.
July 13, 2009.
*431 Ronald Lewis Unger, Buckley & Associates PS Inc., Seattle, WA, Derek P. Radtke, Phillips & Webster, Woodinville, WA, for Appellant.
Michael Simpson Rogers, Pamela A. Okano, Reed McClure, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 A claimant who receives personal injury protection benefits after being involved in a car accident must reimburse his insurer after he has been fully compensated for actual losses suffered. Settling with the tortfeasor is evidence of full compensation, and the claimant cannot defeat the insurer's right to *432 reimbursement with conclusory allegations that he settled for less than his actual damages because he was partially at fault. The trial court in this case correctly ruled on summary judgment that the insurer was entitled to reimbursement.

FACTS
¶ 2 Appellant Loc Thien Truong was involved in a car accident in February 2006. Allstate Property and Casualty Insurance Company, Truong's insurer, paid Truong's medical bills in the amount of $4,172 under the PIP (personal injury protection) provisions of their insurance contract.
¶ 3 Truong made a claim against the other driver, Phuongthao Dinh. Dinh was insured by Pemco Mutual Insurance Company with limits of $25,000. Truong demanded $34,000. Pemco counter offered $2,500. After Truong served Dinh with a summons and complaint, Pemco settled on behalf of Dinh by paying Truong the sum of $9,347.54.
¶ 4 Taking the position that the settlement did not fully compensate him, Truong asked Allstate to acknowledge waiver of any claim to be reimbursed for the PIP payments. Allstate declined to do so. Truong sued Allstate in March 2007 alleging that Allstate acted in bad faith by refusing to waive reimbursement of PIP. Truong's suit also asserted breach of contract and violation of the Consumer Protection Act.
¶ 5 In September 2007, Allstate moved for partial summary judgment, requesting that Truong's suit be dismissed and that Allstate receive judgment for $4,172, the amount of the PIP payments. The trial court granted this motion.
¶ 6 On January 4, 2008, the trial court entered a series of orders bringing the case to an end. Allstate's counterclaims were dismissed and Truong's request for attorney fees was denied. Judgment was entered for Allstate for $4,172 plus prejudgment interest of $610.24. Truong and his attorneys were ordered to pay Allstate's reasonable attorney fees for filing a groundless action. Truong appeals.[1]

FULL COMPENSATION
¶ 7 An insurer may seek an offset, subrogation, or reimbursement for PIP benefits already paid, but only after an insured is "fully compensated for his loss." Sherry v. Financial Indemnity Co., 160 Wash.2d 611, 618, 160 P.3d 31, 34 (2007), citing Thiringer v. Am. Motors Ins. Co., 91 Wash.2d 215, 219, 588 P.2d 191 (1978).
¶ 8 In Sherry, the amount of the claimant's damages was fixed by underinsured motorist (UIM) arbitration. Damages consisted of some $53,000 in medical bills and $90,000 in general damages. The arbitrator reduced the damage award to 30 percent of the total, or $42,938.38, after finding that Sherry was 70 percent at fault. To calculate the judgment to be entered upon the award, the trial court offset the PIP payments of $14,600 less a pro rata portion of the attorney fees Sherry incurred in acquiring the UIM award. This resulted in a final judgment for $34,792.38. On appeal, Sherry argued that the award did not fully compensate him and therefore he did not have to reimburse his insurer for the PIP payments.
¶ 9 Sherry's insurer argued that "full compensation" was the amount recoverable under UIM after a reduction for comparative fault. The Supreme Court disagreed, relying on a long line of cases that take a broader view of the term "full compensation" and noting that a separate premium is paid for PIP coverage. The court held that insureds are fully compensated when they have made a complete recovery of "the actual losses suffered as a result of an automobile accident" as determined by a court or arbitrator. Sherry, 160 Wash.2d at 614, 160 P.3d 31. Because Sherry's actual losses as determined by the arbitrator were over $140,000, greater than the amount he recovered in UIM benefits, *433 his insurer was not entitled to reimbursement of PIP payments.
¶ 10 Truong did not make any claim for UIM benefits under his policy with Allstate. Thus, arbitration was not available as a factfinding method to establish what his total damages were. But Sherry is not necessarily limited to its context of an arbitration concerning UIM benefits. Because the court broadly interpreted the meaning of the term "full compensation," the rationale for denying an offset to the PIP insurer can be equally applicable in a case where an insured obtains a settlement from a tortfeasor. The question then becomes whether the settlement is full compensation for the actual losses suffered in the automobile accident.
¶ 11 Truong argues that the settlement he received from Pemco did not fully compensate him because, like the UIM award in Sherry, the settlement amount was discounted for his comparative fault. In Truong's view, he is entitled to go to trial to have a court (rather than an arbitrator, as in Sherry) decide the amount of the actual losses he suffered in the accident. He contends the trial court erred by resolving his claim on summary judgment.
¶ 12 In reviewing an order granting a motion for summary judgment, all facts submitted and all reasonable inferences from the facts must be construed in the light most favorable to the non-moving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
¶ 13 Allstate set forth facts showing that Truong freely accepted an arms-length settlement from Dinh in an amount less than the limits of Dinh's liability insurance. Such a settlement is some evidence, even if not irrefutable evidence, that the settlement fully compensated Truong.
A nonmoving party in a summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at fact value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material facts exists.
Seven Gables v. MGM/UA Entertainment, 106 Wash.2d 1, 13, 721 P.2d 1 (1986). Thus, Truong had the burden of rebutting that evidence by showing that his damages were greater than the amount he settled for. Truong did not meet this burden.
¶ 14 The record shows that Allstate paid to repair Truong's vehicle, then asserted a subrogation claim against Pemco. Pemco paid to repair Dinh's vehicle, then asserted a subrogation claim against Allstate. Allstate and Pemco made an agreement concerning their subrogation interests in these payments for property damage. For the purpose of settling their respective subrogation claims, the Allstate and Pemco adjusters agreed that Truong and Dinh were each 50 percent at fault.
¶ 15 In resisting summary judgment, Truong relied on the 50-50 property settlement agreement as evidence that the settlement he received from Pemco was discounted by 50 percent for his fault. He alleged that Allstate's agreement to a 50-50 liability split for property damage "interfered with settlement negotiations" on his bodily injury claim. Truong declared that the $9,347.54 he agreed to accept in settlement from Pemco was a compromise he "felt forced to take" due to Allstate claiming that he was 50 percent at fault. He argued that Allstate was estopped from denying that he was 50 percent at fault, and as a result, the court should find it established that he suffered an actual loss of $18,695.08 (settlement of $9,347.54 times two).[2]
¶ 16 Apart from Truong's argumentative assertions, there is no evidence that Allstate interfered with the settlement of Truong's personal injury claim. Allstate adjuster Marlene DeWolf testified that Truong was represented by counsel with respect to his personal injury claim at the time Allstate and Pemco settled the property damage claims. "Allstate did not represent Mr. Truong. I did not intend or believe that the settlement between Allstate and Pemco would in any way bind Mr. Truong with respect to his *434 bodily injury claim against Pemco's insured. I had no power or authority to bind Mr. Truong. I believed and understood that we were settling only Allstate's and Pemco's subrogation claims."[3]
¶ 17 Pemco adjuster Candy Worley testified about settlement negotiations concerning Truong's personal injury claim. She consistently evaluated Truong's total damages at $9,347.54 throughout her involvement with the case. Worley's opening offer to Truong was for only $2,500. Her letter to Truong explained, "the primary reason why our offer is so low is that the liability is 50 percent as agreed with Allstate."[4] Truong rejected this offer and served Dinh with a summons and complaint. At that point, according to Worley, "Pemco decided to evaluate the claim based on 100% liability."[5] Worley then offered Truong $9,374.54, the amount she considered to be 100 percent of his damages. Truong accepted the offer. Truong himself testified in deposition that he did not believe he was at fault for the accident. There is no evidence that during settlement negotiations he acknowledged fault or agreed that his damages would likely be reduced for fault.
¶ 18 Truong cites evidence in the record documenting his injuries and the impact on his daily activities. He correctly points out that assessing damages for actual losses suffered is normally a task for the jury in a personal injury suit. But this is not a personal injury suit against an alleged tortfeasor. It was not brought for the purpose of obtaining compensation for damages. It is a declaratory judgment action brought for the purpose of determining whether the PIP insurer is entitled to reimbursement from compensation the claimant has already obtained. The issue being litigated is whether Truong suffered any damages for which the settlement did not fully compensate him.
¶ 19 Truong submitted a two-paragraph opinion by attorney Steven Weier and argues that it is sufficient to raise an issue of fact. Weier declared that the settlement did not make Truong whole:
Based upon my education, training, experience, and evaluation of the above referenced documents, it is my opinion, on a more probable than not basis, that the settlement value for Mr. Truong's case is higher than $9,347.54 received by way of settlement in the instant case.
It is further my opinion, on a more probable than not basis, that the settlement of $9,347.54 represents a "compromise" settlementa settlement wherein the plaintiff is not made whole, but less than full value for the case is accepted in order to avoid a difficult and costly trial.[[6]]
Weier's opinion is entirely conclusory and unsupported by reference to specific facts and must be disregarded. Hiskey v. City of Seattle, 44 Wash.App. 110, 113, 720 P.2d 867 (1986).
¶ 20 As described by Allstate's adjuster, the accident occurred when the driver of the Dinh vehicle lost control of it on an icy road and slid into a light pole, partially blocking the road. Truong, unable to avoid the vehicle, collided with it. Truong suggests that the fact that he lost control of his vehicle and slid on the ice gives rise to an inference that he was at fault in the accident. This is not an argument that was made below and we decline to consider it for the first time on appeal.
¶ 21 Because Truong has not introduced evidence that the amount of compensation he accepted in settlement reflected a reduction in actual losses for his own comparative fault, Truong's case is not like Sherry. Factually, it is more analogous to Peterson v. Safeco Ins. Co. of Illinois, 95 Wash.App. 254, 976 P.2d 632 (1999). In Peterson, the insured accepted $3,997.64 in PIP benefits; released the tortfeasor from all claims of liability in exchange for a settlement of $20,000; then refused the PIP insurer's demand for payment of its subrogation interest. The court concluded that the insured had been fully compensated by the settlement:

*435 Farmers had $250,000 available to settle this claim. After negotiations and consultation with an experienced plaintiff's personal injury lawyer, Mr. Peterson accepted $20,000. And in exchange for that money, he fully released Farmers and Mr. Carroll from any further liability. He also agreed to indemnify them from any claim by Safeco for its PIP interest. If the gross settlement did not reflect what Mr. Peterson, or his attorney, believed to be full compensation, then they had no obligation to accept it. They could have, instead, completed arbitration to have the question of full compensation decided.
Peterson, 95 Wash.App. at 259-60, 976 P.2d 632.
¶ 22 Peterson shows that a settlement with a tortfeasor for less than limits is evidence that the PIP recipient received full compensation. Like the plaintiff in Peterson, Truong had no obligation to settle if he felt the amount offered did not reflect his total damages. He fully released Dinh and Pemco when he accepted the settlement. If Allstate cannot now obtain reimbursement from the proceeds of the settlement, the effect would be to unfairly eliminate Allstate's subrogation interest in the PIP payments.
¶ 23 The trial court did not err in granting summary judgment dismissing Truong's declaratory judgment action, and with it Truong's claims against Allstate for bad faith and violation of the Consumer Protection Act. Truong is obliged to reimburse Allstate for the PIP benefits.

MAHLER PRO RATA SHARE
¶ 24 The trial court's judgment requires Truong to repay Allstate the entire PIP benefit amount without deducting Allstate's share of the attorney fees and costs incurred in obtaining the settlement from Pemco. Truong assigns error based on this omission.
¶ 25 Truong's efforts to settle the case resulted in a common fund which benefited Allstate. Further, Truong had a contractual right to pro rata sharing. It is well settled that Allstate in these circumstances owes a proportionate share of Truong's attorney fees. Mahler v. Szucs, 135 Wash.2d 398, 426-27, 436, 957 P.2d 632 (1998); Peterson, 95 Wash.App. at 264, 976 P.2d 632.
¶ 26 Allstate contends it would be inequitable for Truong to receive his pro rata share because he forced the company into litigation to obtain reimbursement and because, after receiving the settlement from Pemco, counsel for Truong did not retain the full amount necessary to reimburse Pemco in the event reimbursement would be required. Allstate has not cited persuasive authority in support of these arguments. On remand, the trial court will recalculate the judgment with a deduction for Allstate's pro rata share of attorney fees and costs.

ALLSTATE'S COUNTERCLAIM
¶ 27 Allstate counterclaimed against Truong alleging bad faith, breach of contract and violation of the Consumer Protection Act for Truong's refusal to reimburse Allstate. Truong moved to dismiss Allstate's counterclaim on summary judgment. He sought attorney fees on the basis that it was frivolous for Allstate to argue that an insured could commit bad faith or violate the Consumer Protection Act. The court granted Truong's motion only to the extent of dismissing Allstate's claim under the Consumer Protection Act. Allstate then moved, successfully, for voluntary dismissal of the remainder of its counterclaim.
¶ 28 Truong contends the trial court erred by failing to dismiss Allstate's entire counterclaim. Denial of a motion for summary judgment is generally not an appealable order. Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wash.2d 800, 801-02, 699 P.2d 217 (1985). There is no reason to review the order in this case. Allstate's voluntary nonsuit rendered moot any issue concerning the viability of the remainder of Allstate's counterclaim.

ATTORNEY FEES AWARD TO ALLSTATE
¶ 29 Allstate moved for an award of attorney fees for prevailing on its motion for summary judgment to dismiss Truong's suit. The trial court granted the motion after finding *436 that Truong had no factual basis for alleging that he was not made whole by his settlement with Pemco. The court found that Allstate's reasonable attorney's fees were $17,920. After a deduction of $2,000 for Allstate's frivolous Consumer Protection Act claim, the court entered judgment for $15,920 jointly against Truong and his attorneys.
¶ 30 Allstate argues that while Truong may challenge the award of attorney fees in his own right, he has no standing to challenge the award insofar as it was imposed against his attorneys. Allstate relies on Breda v. B.P.O. Elks Lake City 1800 So-620, 120 Wash.App. 351, 90 P.3d 1079 (2004). Unlike in Breda, where sanctions were imposed only against counsel, here Truong and his attorneys were jointly liable for the sanctions. Because Truong is an aggrieved party under RAP 3.1, he has standing to appeal the basis for the order of attorney fees.
¶ 31 The court awarded the fees under RCW 4.84.185 (action frivolous and advanced without reasonable cause) and CR 11. With respect to each of these bases of the award, the standard of review is abuse of discretion. Skimming v. Boxer, 119 Wash. App. 748, 82 P.3d 707 (2004). An award of fees under RCW 4.84.185 may be made against a party when the action, viewed in its entirety, cannot be supported by any rational argument on the law or facts. Skimming, 119 Wash.App. at 756, 82 P.3d 707. An award of fees under CR 11 may be made against an attorney or party for filing pleadings that are not grounded in fact or warranted by law or are filed in bad faith for an improper purpose. Skimming, 119 Wash. App. at 754, 82 P.3d 707. Because CR 11 sanctions have a potential chilling effect, the trial court should impose sanctions only when it is patently clear that a claim has absolutely no chance of success. The fact that a complaint does not prevail on its merits is not enough. Skimming, 119 Wash.App. at 755, 82 P.3d 707.
¶ 32 We cannot agree that Truong's lawsuit is entirely baseless or unsupported by rational argument. It was inspired by the Court of Appeals decision in Sherry v. Financial Indemnity Co., 132 Wash.App. 355, 131 P.3d 922 (2006), a case holding as a matter of first impression that the rule forbidding a PIP offset until the claimant is fully compensated applies even where the claimant's award is reduced for contributory fault. Truong's lawsuit aimed to extend Sherry, the context of which was an underinsured motorist arbitration, into a context where the recipient of PIP benefits settled with the tortfeasor. There had been no published appellate opinions addressing that question. CR 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Bryant v. Joseph Tree, 119 Wash.2d 210, 219, 829 P.2d 1099 (1992). Truong's case is weak factually but the fact that we are affirming the order of summary judgment does not mean that the case was entirely groundless or advanced for an improper purpose. We conclude the record lacks a tenable basis for the award of sanctions against Truong and his attorneys. We need not reach Truong's argument that the court erroneously included fees incurred by Allstate in connection with its unsuccessful allegation that Truong violated the Consumer Protection Act.
¶ 33 Allstate requests attorney fees on appeal under RCW 4.84.290. This statute allows for fees to the prevailing party on appeal "for the purpose of applying the provisions of RCW 4.84.250." But RCW 4.84.250 applies only in an action for damages where the amount pleaded is $10,000 or less. Truong's complaint pleads for damages in an amount to be proven at trial. Because RCW 4.84.250 does not apply, Allstate is not entitled to fees under RCW 4.84.290. We also deny Allstate's request for fees on appeal under RAP 18.9 because Truong's appeal is not frivolous.
¶ 34 The order granting summary judgment to Allstate on Truong's declaratory judgment is affirmed. The judgment in favor of Allstate is remanded to deduct Allstate's pro rata share of attorney fees and costs incurred by Truong in obtaining the settlement with Pemco. The order requiring Truong to pay Allstate's attorney fees for defending against this lawsuit is reversed.
WE CONCUR: DWYER, A.C.J., and APPELWICK, J.
NOTES
[1] Truong has attached as an appendix to his reply brief certain documents that are not part of the record on appeal. Allstate's motion to strike these documents is granted. See RAP 9.11(a). Allstate also complains that Truong waited until his reply brief to argue the inadmissibility of certain evidence considered by the trial court. Allstate's point is well taken and we have not considered such argument by Truong.
[2] Clerk's Papers at 101-05.
[3] Clerk's Papers at 32-33.
[4] Clerk's Papers at 122.
[5] Clerk's Papers at 30.
[6] Clerk's Papers at 120.