# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the marriage of:

JOSEFIN KANNIN,

　　　　　　　Respondent,

and

JOHN KANNIN,

　　　　　　　Appellant.

No. 79187-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 25, 2019

ANDRUS, J. — John Kannin appeals a superior court order enforcing a child support order and awarding attorney fees to his ex-wife, Josefin Kannin. John[1] challenges the court's findings that he violated the child support order and was intransigent. He also contends the court improperly excluded an untimely filed declaration and violated his right to due process and to a jury trial. We conclude that none of John's claims have merit and affirm the superior court's order.

## FACTS

John and Josefin filed for divorce in 2014. On June 22, 2015, the parties entered into a stipulated agreement under CR 2A (the "Agreement") "as a full and complete settlement of this dissolution action." The Agreement provided for the

---

[1] Because the parties share the same last name, we refer to them by their first names.

distribution of property and support for the couple's two children, J.K. and C.K. The Agreement established, based on the couple's income, that John was responsible for 69 percent of the basic child support obligation and Josefin for the remaining 31 percent. The Agreement provided that, in addition to the basic child support obligation, John would pay Josefin $199 each month for the children's extra-curricular activities.

> The parties agree that Mr. Kannin will pay an additional $199 on the first of each month to Ms. Kannin beginning June 1, 2015, to cover the cost of camps and extra-curricular activities for the children. This payment may be modified by mutual agreement twelve months after signing this Agreement. This payment will be made to Ms. Kannin on the first of each month.

John also agreed that he would pay Josefin $767 in outstanding child support owed under the temporary order. Finally, the Agreement outlined the couple's responsibilities for the children's health insurance and uninsured medical expenses.

> 1. <u>Health Insurance</u>. Mr. Kannin agrees to continue to pay for the children's health insurance. If Ms. Kannin secures full-time employment at or above her imputed income salary level, the parties agree to each pay the cost of the health insurance not paid for by her employer proportionate to their incomes on the Child Support Worksheet (69/31). If Ms. Kannin acquires a job where health insurance for dependent children is covered in full, Mr. Kannin does not have to pay for health insurance. Should Ms. Kannin lose her job, Mr. Kannin will assume full payment of health insurance for the children until such time as Ms. Kannin secures full-time employment again. If Mr. Kannin loses his job, the health insurance will be paid by Ms. Kannin.

> 2. <u>Uninsured Medical Expenses</u> shall be paid for by the parties proportionate to their incomes as per the Child Support Worksheets. If Ms. Kannin is unemployed or employed part-time, such expenses will be paid by John.

2

John and Josefin agreed in writing that the Agreement "stands alone and, upon execution, is binding as a contract and enforceable in court." They also agreed that the Agreement "will be incorporated into final documents to be filed with the court to finalize the case."

On the same date the parties signed the Agreement, they filed an agreed child support order. The final order memorialized the $199 activity payment. It also provided as follows:

> For any extracurricular activities not covered under the general expenses, division of payment will be based upon agreement of the parties or further order of the court.
>
> The paying parent shall furnish the other parent with copies of documentation for the costs and his or her payment (whether by invoice, copy of check, or otherwise) within thirty (30) calendar days of the expense being incurred. The other parent shall reimburse the paying parent within fifteen (15) calendar days of receipt of such documentation.

The final order required that John pay the children's health insurance premiums. It also specified that any uninsured medical expenses, including orthodontic treatment, shall be paid by the parties in the same proportion as the basic child support obligation.

At the time of the entry of the child support order, Josefin was unemployed. Although the order required John to purchase health insurance, Josefin chose to provide it because she was eligible to obtain Medicaid coverage for the children. J.K. began receiving orthodontic treatment, which was covered by Medicaid.

Once Josefin became employed, she was notified that the children would no longer be eligible for Medicaid. On January 31, 2018, she told John that he

3

would need to purchase health insurance as required by the child support order. John did not do so. Accordingly, Josefin enrolled the children in her employer's health insurance plan on March 12, 2018. Her employer's plan did not cover orthodontic treatment. Josefin contacted John and requested that he contribute his proportionate share of the $193.89 monthly premiums.

On April 11, 2018, J.K.'s orthodontist informed John and Josefin that they would be responsible for the cost of orthodontic treatment now that it was no longer covered by J.K.'s health insurance. The record contains a patient ledger from the orthodontist showing a balance of $3749.28 incurred between April 11 and July 1, 2018. John told the orthodontist that he refused to pay out of pocket for any of the treatment. On June 1, 2018 John told Josefin he would agree to pay only 50 percent of the cost for the monthly premiums and J.K.'s orthodontic treatment. He subsequently wrote Josefin a check for $578 as his portion of the children's health insurance premiums.[2] On July 14, 2018, John sent Josefin an e-mail informing her he had re-enrolled the children in Medicaid effective July 1, 2018.

On August 3, 2018, Josefin filed a motion to enforce the child support order.[3] Josefin alleged that John stopped making the $199 monthly payment in August 2015. She also alleged that John had not paid the outstanding child support balance, the children's health insurance premiums, or his share of J.K.'s uninsured orthodontic expenses. In response, John argued that he should not be required to

---

[2] The judgment credited John with this amount.

[3] Josefin entitled her motion "Motion to Enforce CR 2A Agreement And Child Support Order." But it is clear that Josefin's motion is a post-decree motion to enforce a child support obligation pursuant to chapter RCW 26.18, rather than a motion to enforce a CR 2A agreement.

pay Josefin for the children's activities because he chose to pay for the activities directly himself. He submitted a declaration and receipts showing that he had paid for his daughter's horseback riding lessons and his son's gym membership.

A hearing was held on October 5, 2018 before a superior court commissioner. At the hearing, John provided the court with a second declaration outlining additional amounts he had spent on the children's activities. Josefin objected to the declaration as untimely, and the court sustained the objection. John moved for a continuance, which the court denied.

The court granted Josefin's motion and entered a judgment against John in the amount of $11,704.93. This comprised $767 in outstanding child support, $7,761 for the monthly activity fees, $544.93 for John's proportionate share of the children's health insurance premiums, and $2,632 for John's proportionate share of J.K.'s orthodontic treatment and prescriptions. The court also awarded Josefin $2500 in attorney fees and costs due to John's intransigence. The court denied John's motion for reconsideration. John appeals.

## DISCUSSION

John contends that the court erred in enforcing the monthly payment for the children's extracurricular activities. He argues that "[w]hen read as a whole" the language of the Agreement simply required him to "contribute $199 to activity fees for the children," and that he did so by paying the activity providers directly. We reject this claim because the child support order, which adopts the language of the Agreement, unambiguously required John to make the monthly payment to Josefin. It explicitly states that John must "pay an additional $199 on the first of

5

each month to Ms. Kannin beginning June 1, 2015." The payment can be modified only by mutual agreement, and John does not establish the existence of any such agreement. Furthermore, the child support order provides that John may only unilaterally pay for (and seek reimbursement for) extracurricular activities in excess of the $199 monthly amount. We decline John's invitation to venture beyond the plain language of the order and find ambiguity where none exists. The court did not err in granting Josefin's motion to enforce this provision of the child support order.

John next contends that the court erred in refusing to consider his second declaration without considering the factors set forth in Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). Burnet held that a court must consider certain factors on the record before choosing one of the harsher remedies allowable under CR 37(b) for violation of a discovery order. Burnet, 131 Wn.2d at 494. These factors include: (1) whether the untimeliness was willful, (2) whether the other party would suffer substantial prejudice because of the violation, and (3) whether a lesser sanction would suffice. Burnet, 131 Wn.2d at 494.

John correctly notes that a superior court must analyze the Burnet factors before excluding untimely evidence in response to summary judgment. But John provides no legal authority or analysis in support of his claim that Burnet applies at a post-decree motion to enforce a child support order. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

6

Moreover, even if John had established that the court erred, a lack of <u>Burnet</u> findings is harmless if the excluded evidence is irrelevant, cumulative, or otherwise inadmissible. <u>See</u> <u>Jones v City of Seattle</u>, 179 Wn.2d 322, 356-57, 314 P.3d 380 (2013). The evidence John wished to provide at the hearing consisted only of additional receipts for his children's various extracurricular activities. But the court already had evidence before it showing that John paid for some of his children's activities. None of this evidence was relevant because, as discussed above, the child support order clearly requires John to pay Josefin $199 each month so that she could pay for the children's activities. John's untimely declaration was both cumulative and irrelevant.

John argues that the court erred in failing to consider his defense of equitable estoppel with regard to the monthly activity fee. Because John did not raise this issue before the superior court, he has failed to preserve this argument for review. <u>See</u> RAP 2.5(a).

John next maintains that the superior court erred in finding that he failed to pay his proportionate share of J.K.'s orthodontic treatment as required by the child support order. He contends that health insurance covered the treatment, and the order thus unjustly enriches Josefin. But "[t]he party challenging a finding of fact bears the burden of demonstrating the finding is not supported by substantial evidence." <u>Nordstrom Credit, Inc. v. Dep't of Revenue</u>, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993). John fails to meet this burden. The record shows that $3749.28 of J.K.'s treatment expenses were not covered by health insurance. John points to no evidence contradicting this finding. Though he argued below

that Medicaid has a "look back" period that would "likely" pay for any expenses during the period between March and July when the children were uninsured, John offered no evidence in support of this claim. Substantial evidence in the form of the patient ledger supported the superior court's finding.[4]

John argues that the superior court erred when it denied his request to impose CR 11 sanctions against Josefin.[5] He contends that Josefin's claim regarding the children's health insurance premiums was frivolous and not grounded in fact.

A trial court may award fees under CR 11 against an attorney or a party for filing a pleading that is not grounded in fact or warranted by law or is filed in bad faith for an improper purpose. Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co., 151 Wn. App. 195, 207, 211 P.3d 430 (2009). Sanctions should be imposed "only when it is patently clear that a claim has absolutely no chance of success." Loc Thien Truong, 151 Wn. App. at 208. We review a decision on CR 11 sanctions for an abuse of discretion, asking whether the trial court's decision was manifestly unreasonable or based on untenable grounds. MacDonald v. Korum Ford, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996).

Here, the child support order provided that John was required to obtain health insurance for the children, and that if he did not do so, he was required to contribute a 69 percent share of the premiums paid by Josefin. It is uncontroverted

---

[4] John additionally contends that the parties' agreed final parenting plan requires joint decision-making for non-emergency medical care. He contends that he was not consulted regarding J.K.'s orthodontic treatment and thus should not be financially responsible for it. John cites no authority in support of this claim and we do not consider it.

[5] Although the superior court did not expressly rule on the CR 11 issue, its denial is implicit given that it granted Josefin's motion in its entirety.

that John did not pay his full share of the premiums after the children were enrolled in Josefin's employer-provided health insurance plan in March of 2018. John fails to establish any grounds for CR 11 sanctions, and the superior court did not abuse its discretion in declining to impose them.

John next contends that he was denied due process at the hearing because the court allowed only five minutes for oral argument. But King County Local Family Law Rule (KCLFLR) 6(f)(1) provides that "[e]ach side is allowed five (5) minutes for oral argument, including rebuttal, unless otherwise authorized by the court." KCLFLR 6(g)(1) provides the procedure by which a litigant may request additional time for oral argument. John did not request additional time nor follow the procedure outlined in KCLFLR 6(g)(1). His own failure to do so does not establish a due process violation.

Citing article 1, section 21 of the Washington constitution, John argues that the issue of whether he breached the CR 2A contract and the amount of the judgment are questions for a jury to decide, and thus he was denied his constitutional right to a jury trial. But Josefin did not file a civil action for breach of contract. Rather, she filed a motion to enforce an existing child support order. John cites no authority in support of his claim that he is entitled to a jury trial for a post-decree motion to enforce.

John argues the superior court erred in awarding Josefin attorney fees based on his intransigence. A court may enter an award of fees when one party's intransigence causes the other party to incur additional legal costs. In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997). "Determining intransigence

9

is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly." In re Marriage of Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015) (citing In re Marriage of Greenlee, 65 Wn. App. 703, 708, 829 P.2d 1120 (1992)). "The party requesting fees for intransigence must show the other party acted in a way that made trial more difficult and increased legal costs" such as "forcing court hearings for matters that should have been handled without litigation." In re Marriage of Pennamen, 135 Wn. App. 790, 807, 146 P.3d 466 (2006). We review a trial court's decision on attorney fees for an abuse of discretion. In re Marriage of Bobbitt, 135 Wn. App. 8, 29-30, 144 P.3d 306 (2006).

John argues that he cannot be intransigent for "exercising a defense in good faith and asserting contract rights." But the superior court did not make a finding of intransigence based on John's defense to the motion. Rather, the court found that John was intransigent for repeatedly violating the child support order, obligating Josefin to bring a motion to enforce.

> The court finds that the petitioner is entitled to an award of $2500 in her reasonable attorney's fees due to the respondent's intransigence, specifically, the CR 2A and child support order are clear and the amounts owed thereunder as claimed by the petitioner are not disputable.

The court's finding of intransigence is supported by the record. John fails to demonstrate that the trial court abused its discretion in awarding attorney fees for intransigence.

10

Both parties seek attorney fees and costs on appeal. John requests fees pursuant to RCW 26.18.160, which provides as follows:

> In any action to enforce a support or maintenance order . . . the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees. An obligor may not be considered a prevailing party under this section unless the obligee has acted in bad faith in connection with the proceeding in question.

John is not the prevailing party on appeal and is thus not entitled to attorney fees. Moreover, John failed to request attorney fees on appeal in his opening brief, waiting until the reply brief to raise the issue. Under RAP 18.1(b), a party must devote a section of its opening brief to a request for attorney fees and expenses. John's request does not comply with RAP 18.1(b).

Josefin requests fees pursuant to RAP 18.9(a), arguing that John's appeal is frivolous. Because the appeal presents no debatable issues upon which reasonable minds might differ, we award Josefin her reasonable attorney fees and costs on appeal, subject to compliance with RAP 18.1.

Affirmed.[6]

_____
Andrus, J.

WE CONCUR:

_____               _____

---

[6] John filed a motion to strike portions of Josefin's response brief, arguing that her recitation of the procedural history was not relevant to the appeal and served only to impugn his character. We deny the motion. Such motions to strike are not favored, and this court has the ability to determine the facts relevant to a fair resolution of the issues presented.